EVANS, Appellant, vs. LA CROSSE LAUNDRY & CLEANING COMPANY, Respondent.    [Two cases.]

*September 10—October 14, 1947.*

For the appellants there was a brief by *Fred M. Evans* and *Spohn, Ross, Stevens & Lamb,* all of Madison, and oral argument by *Mr. Evans* and *Mr. William H. Spohn.* .

For the respondent there was a brief by *Johns, Roraff & Coleman* of La Crosse, and oral argument by *Robert D. Johns.*

WICKHEM, J.    The facts in this case are not in any serious controversy.    Defendant is engaged in the laundry and dry-cleaning business.    Mr. and Mrs. Evans and an adult son lived together in La Crosse. .  The son had asked plaintiff to send a pair of trousers for dry cleaning and she sent them to defendant.    The son was about to leave on vacation and the garment had not been returned.    On July 8, 1944, plaintiff inquired of the neighborhood branch of the laundry as to the whereabouts of the trousers and was directed to the central office, a place to which she had never theretofore gone.    Mr. Evans dropped plaintiff at the laundry where plaintiff located the missing garment, paid her bill at the desk a few feet from the open doorway leading to the street and then approached the doorway.    She had a purse in one hand and the trousers were folded over her other forearm.    At the door she lost her footing and attempted to grab the left doorjamb with her left arm as a result of which her body swung around and she fell to the sidewalk on her back sustaining severe injuries.    There were no witnesses to the fall other than plaintiff.

The actions are based upon the safe-place statute and it is asserted, (1) that the door did not open outward as required by the rules of the industrial commission, and (2) that the steps leading up to the entrance failed in several respects to satisfy requirements of the rules promulgated by the industrial commission.    It is claimed that there should have been

three risers and that there were only two; that there should have been a platform as wide as the door at the top of the steps; that the steps were too narrow and too shallow; that there was a difference between the level of the floor inside the building and that of the first step; that there was no handrail upon the steps.

Defendant admits that there was a violation in that the top step was one and five-eighths inches lower than the level of the floor inside of the threshold and the tread approximately two inches narrower than is required by the rule. There was evidence by an expert as to various ways in which the steps could be made safer. No useful purpose will be served by considering whether some or all of these alleged defects constituted violations of the safe-place statute. For the purposes of this opinion we shall assume that all of them did violate the statute.

The trial court decided that the element of proximate cause was lacking and, after a careful consideration, we hold that his conclusion was correct. The fact that the door opened inward had nothing to do with this accident. The exit would not have been any safer so far as plaintiff was concerned had it opened outward. There was no claim that she reached for the left jamb to get support because of her inability to use the right jamb for that purpose. In any case, a rule requiring a door in a public building to open outward is not for the purpose of so freeing the jamb that people leaving the building can use the doorjamb as a species of handrail. The rule has to do with facilitating exit in cases of fire.

So far as the stairway is concerned, plaintiff by her own testimony never touched it. She slipped within the building on a portion of the floor that is concededly safe, and to save herself from falling seized the doorjamb. This resulted in swinging her body around and precipitating her out the door. She fell and landed without touching the steps. There is no basis for an inference that a handrail or a platform or a wider step

or the presence of three risers rather than two or the difference in level between the top step and the floor made the slightest difference in her fall. She had already committed herself to the doorjamb to perform whatever function a handrail would perform and, indeed, a handrail would not have been within her reach at the point where she stumbled. She did not trip upon the steps or threshold and the evidence is not open to the inference that her fall or the severity of her injuries was affected in the slightest degree by their condition or design. The case resembles *Schoonmaker v. Kaltenbach,* 236 Wis. 138, 294 N. W. 794. There a stairway ran between the sidewalk and second floor of the building. It had a platform three steps above the bottom of the stairs. Under the rules of the industrial commission it was required to have a single handrail. It had been equipped with a double handrail down to the platform but no handrail on the platform or lower steps. Plaintiff slipped and fell on the portion of the steps which had a handrail. He lost hold of the handrail and fell to the platform and from there down the remaining steps. Plaintiff asserted that the lack of a handrail on the lower three steps had something to do with the accident. The court held this to be pure speculation since the handrail could have been put on either side of the stairway and there was no reason to suppose that plaintiff could have broken the fall if a handrail had been erected. It said, however, that if he had slipped on the last three steps a different situation would have been presented. In this case the stumble occurred in safe territory at a point where none of the features urged as necessary to make the stairway safe could have prevented or broken her fall. The forces that precipitated her through the door did not have their source in any unsafe construction or design of the premises and thereafter she did not come into contact with the steps in any way. We can only guess what would have happened had the steps fully satisfied the statute. The consequences might have been aggravated although if there is a permissible inference it is that the results would have been the same.

We would be dealing with quite a different situation if while entering or leaving the building she had stumbled by reason of the difference in level between the top step and the floor of the interior or had she lost her balance due to the shallowness of the risers or the narrowness of the steps. In these situations a jury would also be permitted to infer that the absence of a required handrail might have had a part in causing the fall or in aggravating its results. Since plaintiff lost her balance on a portion of the premises that was safe and as a result was precipitated over the alleged unsafe portions without coming into contact with them at all, we see no escape from the trial court's conclusion that the conditions, assuming them to have been unsafe, could not have been a factor in causing plaintiff's injuries.

For this reason we deem the so-called entrapment cases and the handrail cases cited by plaintiff not to be in point.

It follows that the judgments below must be affirmed.

*By the Court.*—Judgments affirmed.