[No. 33679. Department One. March 7, 1957.]

PATRICIA CURRIE et al., *Appellants*, v. UNION OIL COMPANY OF CALIFORNIA, *Respondent*.[1]

[1]Reported in 307 P. (2d) 1056.

*Kennett, McCutcheon & Soderland*, for appellants.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *Thos. J. O'Leary*, for respondent.

Foster, J.—Appellant Patricia Currie, now and hereafter referred to as the sole appellant, a clerical employee of the respondent, Union Oil Company, appeals from a final judgment of dismissal upon the verdict in favor of the respondent in her action for personal injuries sustained in the Seattle office of the respondent. While a detailed evidentiary statement is unnecessary, a summary, however, is essential to a proper understanding of the assigned errors.

In December, 1953, appellant entered the employ of the respondent oil company at its Seattle office and was thereafter continuously so employed until March 22, 1954. The room in question had two doors, one of which was customarily used for entrance and swung inward, and the other cus-

tomarily used for exit and swung outward. Section 605 of the Seattle building code (amended to August, 1953) requires exit doors to swing in the direction of egress travel. That provision applies if more than twenty-five people are employed in any such room, and more than that number were so employed here. Section 132 of the Seattle building code (amended to August, 1953) provides where the term "entrance" is used, it shall also mean an "exit."

In walking from one desk to another, appellant passed the entrance door as a person entering swung it inward, striking her and causing the injuries complained of. Appellant worked in this room continuously for a period of three months, during which time she passed the door several times daily and observed its operation. Instruction No. 5[2] summarized the ordinance and advised that any violation of the ordinance was negligence *per se* but that, before recovery could be predicated thereon, such negligence must be the proximate cause of the injury. Appellant's requested instruction No. 7 was substantially the same, except that it omitted the requirement that the violation must be the proximate cause of the injury.

While the appellant makes twenty separate assignments of error, which her counsel discusses under seven headings, it is neither possible nor necessary to discuss each separately.

[2]"No. 5. You are instructed that an ordinance of the City of Seattle numbered 72200 as amended, known as the Building Code, provides in part as follows:

"'Section 605 . . . . Exitway doors shall swing in the direction of the egress travel except that a door which serves not more than twenty-five (25) persons and does not swing over a landing may swing against the travel . . . .'

"'Section 132, Definitions . . . . Exitway: A means of egress other than a window, fire escape or ladder fire escape.

"'Exit: A doorway or similar opening through which people pass in leaving an enclosure, a building or part thereof. It usually constitutes a part of an exitway, but in certain instances may be all there is to an exitway. Where the term "entrance" is used, it shall also mean an exit.'

"The violation, if you find there was a violation, of such ordinance is negligence in and of itself. Such negligence, however, will not render a defendant liable for damages unless such violation proximately contributed to or proximately caused the injury, if any."

■ Appellant first urges that the court should have decided as a matter of law that the ordinance was violated by the entrance door swinging inward instead of outward. This contention cannot be sustained for three reasons: First, it would eliminate the possibility of any entrance door swinging inward in any room where more than twenty-five people were employed; second, it omits the controlling circumstance that the violation of an ordinance must be the proximate cause; third, the particular requirement of the ordinance was for fire protection and not to prevent persons from colliding with inward-opening doors.

The room did have two outward-swinging exit doors, which is all a reasonable construction of the ordinance requires. If all doors swung outward, a similar hazard would be created to all persons passing on the outside. On the other hand, a door which swings in the direction of travel is less likely to become jammed in cases of panic than a door which swings only in the opposite direction.

■ Instruction No. 5 told the jury that the violation of the ordinance was negligence *per se*, but that before such violation would create liability it must be the proximate cause of the injury. This court in a long series of cases is thoroughly committed to the rule that, in order to create liability, the violation of a statute or ordinance must be the proximate cause. *Gardner v. Seymour*, 27 Wn. (2d) 802, 180 P. (2d) 564; *Bleiler v. Wolff*, 23 Wn. (2d) 368, 161 P. (2d) 145; *Bernard v. Portland Seattle Auto Freight, Inc.*, 11 Wn. (2d) 17, 118 P. (2d) 167; *Webb v. Oregon-Washington R. & Nav. Co.*, 195 Wash. 155, 80 P. (2d) 409; *Hooper v. Corliss*, 146 Wash. 50, 261 Pac. 645. It cannot be said that the mere violation of the statute or ordinance will support an action for damages, even though it be negligence *per se*, unless there is legally sufficient evidence to show that the violation was the proximate cause of the accident. Such evidence is here lacking.

■ What has been said applies likewise to the assignment of error respecting the refusal to give appellant's requested instruction No. 7. In addition, it must also appear

that the type of harm involved is one which the ordinance was intended to prevent. *Cook v. Seidenverg*, 36 Wn. (2d) 256, 217 P. (2d) 799. Moreover, if the ordinance does not cover the particular hazard in question, there is substantial authority that its violation is not even evidence of negligence and has no effect on liability at all.[3] Prosser on Torts (2d ed.), p. 162, § 34, fn. 81.

██ The purpose of the ordinance in question is not to prevent injury from swinging doors but to facilitate speedy evacuation in the event of fire. Section 603 of the Seattle building code (amended to August, 1953) specifically refers to panicky conditions. Section 601 of the code (amended to August, 1953) expressly declares the purpose of the ordinance is to evacuate in case of fire. The supreme court of Wisconsin in *Evans v. LaCrosse Laundry & Cleaning Co.*, 251 Wis. 296, 28 N. W. (2d) 918, declared that such rules relating to doors were for the purpose of evacuation in case of fire. A judgment for the plaintiff was reversed in *Hecht Co. v. McLaughlin*, 214 F. (2d) 212, because the court instructed as a matter of law that the violation of the ordinance prohibiting doors swinging into passageways was negligence. The appellant had the question submitted to the jury on the most favorable instructions.

Error is assigned upon the refusal of the court to withdraw from the consideration of the jury the question of the assumption of risk. This assignment is upon the hypothesis that the purpose of the ordinance in requiring exit doors to

---

[3] "The violation of a legislative enactment by doing a prohibited act, or by failing to do a required act, makes the actor liable for an invasion of an interest of another if:

"(a) the intent of the enactment is exclusively or in part to protect an interest of the other as an individual; and

"(b) the interest invaded is one which the enactment is intended to protect; and,

"(c) where the enactment is intended to protect an interest from a particular hazard, the invasion of the interests results from that hazard; and,

"(d) the violation is a legal cause of the invasion, and the other has not so conducted himself as to disable himself from maintaining an action." Restatement, Torts, § 286.

swing outward is for the purpose of protecting people against the hazard of inward-swinging doors.

This situation bears no resemblance to *Kelly v. The Vogue*, 21 Wn. (2d). 785, 153 P. (2d) 277, because the handrail on the stairway was for the exclusive purpose of protecting those using the steps, and there was a direct relationship of cause and effect between the absence of the handrail, required by ordinance, and the plaintiff's fall occasioned by the collapse of the outer edge of the steps. Appellant's argument comes to this: That, irrespective of the number of exit doors swinging outward, the ordinance was violated if any door swung inward. We find nothing in the ordinance sustaining this view. It is abundantly clear that the room did have sufficient exit doors to comply with the standards of the ordinance. There is no room for the argument that there was a violation of any ordinance against the hazard here complained of. There was in *Kelly v. The Vogue, supra.* This assignment is without merit.

The assignment is made that appellant did not have her theory of the case presented because of the court's refusal to give three requested instructions.

■ Appellant insists that the doctrine of assumption of risk does not apply unless there is knowledge of the defect and an appreciation of the danger to the party himself. The argument entirely overlooks the fact that, for a period of three months, appellant worked in the room in question and daily observed the operation of the doors. The other two instructions have to do with diversion of appellant's attention. The diversion of one's attention in order to justify the requested instruction requires much more than the showing of the performance of the ordinary and regular tasks of the employment. Here, the appellant knew from daily observation over a period of three months that the door opened inward and that she had to pass it in her routine work.

■ Error is assigned upon the admission of the testimony of Lester A. Malone of the city building department, whose title was director of permits and inspections. We are told that he was permitted to testify as to the meaning of

the ordinance. He testified that he had issued a city building permit which included the doors in question. When asked if the ordinance dealt with ingress doors, the jury was excluded and the court heard the testimony in the absence of the jury. Thereafter, the jury was recalled, and he did testify that there was nothing in the ordinance referring to the ingress door in question. On cross-examination, he testified that the code dealt only with exit doors and that there were two exit doors to the room. The trial judge exercised discriminating care in hearing the witness in the absence of the jury. The testimony is entirely cumulative that there were two exit doors, and we are satisfied that the provisions of the ordinance relied upon do not deal with entrance doors. There was no error in the admission of this testimony.

Appellant herself, over respondent's objection, offered proof of payment by the respondent of her medical expenses and a wage allowance in consequence of an insurance contract. The objection provoked appellant's counsel to say that the only purpose of the offer was to show the extent of the medical treatment. In the instruction complained of, the court advised the jury that the payment of the medical expenses and a wage allowance was not to be treated as evidence of legal liability. This is not a comment on the evidence.

Finally, error is assigned upon the instruction that the respondent was not an insurer of the safety of its employees. While perhaps this instruction might appropriately have been omitted, it cannot be said that it was reversible error. Appellant concedes in the brief that this is not reversible error in itself but contends that, when considered in connection with the refusal of requested instructions, the substance of which was that pleadings are not evidence and are only reviewed for the purpose of defining the issues to be tried, there was error. This, however, overlooks the fact that the jury was correctly advised in instruction No. 2 of the limited purpose of the jury's consideration of the pleadings.

We find no merit in any of the assignments of error, and the judgment is therefore affirmed.

SCHWELLENBACH, DONWORTH, FINLEY, and ROSELLINI, JJ., concur.