[No. 12231-2-I. Division One. December 27, 1984.]

STERNOFF METALS CORPORATION, *Plaintiff*, v. VERTECS
CORPORATION, *Appellant*, SPENCE PITTS INSURANCE,
INC., ET AL, *Respondents*.

*Ulin, Dann, Elston & Lambe* and *Richard L. Lambe,* for appellant.

*Lane, Powell, Moss & Miller* and *Gordon W. Moss,* for respondent Spence Pitts Insurance.

*Williams, Lanza, Kastner & Gibbs, Jerry B. Edmonds,* and *Susan E. Lehr,* for respondents Parker, Smith & Feek, et al.

*Robert D. Williams* on behalf of Surplus Line Association, amicus curiae.

CORBETT, A.C.J.—Vertecs Corporation (Vertecs) appeals dismissal of its action against Parker, Smith & Feek, Inc. (Parker), and John and Jane Doe Zefkeles pursuant to CR 41(b)(3), and the earlier summary judgment dismissing its claim against Spence Pitts Insurance, Inc. (Spence Pitts). We affirm.

Vertecs is a contractor engaged in the business of installing insulation products. Parker is an insurance brokerage firm which placed insurance for Vertecs beginning in 1961. Zefkeles is the employee of Parker who was principally responsible for obtaining insurance coverage for Vertecs beginning in 1970. Spence Pitts is a surplus line broker through whom Parker placed coverage for Vertecs.

Spence Pitts placed Vertecs' coverage with All–Star Insurance Co. (All–Star). All–Star is a surplus line insurance company not authorized to do business in Washington. In January 1975, during the term of All–Star policy SL 01769, a polyurethane insulation fire occurred at the plant of Sternoff Metals Corp. Vertecs had installed the insulation. Sternoff initiated this action against Vertecs.

Vertecs made a claim against All–Star. All–Star initially provided a defense but discontinued these efforts and declined to settle or pay the claim when it became insolvent in 1977. Vertecs impleaded Spence Pitts, Parker, and Zef-

keles as third party defendants. Sternoff's claim was settled and is no longer at issue. Vertecs' complaint asserted at least five theories for recovery: (1) common law negligence, (2) per se negligence, (3) breach of fiduciary duty, (4) breach of warranty, and (5) violation of the Washington Consumer Protection Act, RCW 19.86; essentially, insurance broker malpractice.

Parker, Spence Pitts, and Zefkeles moved for summary judgment. The civil motions judge granted Spence Pitts' motion to dismiss. Vertecs' claims against Parker and Zefkeles proceeded to trial.

At trial, Vertecs pursued only its claims of negligence per se based upon an alleged violation of RCW 48.15.040(2) and violation of the Consumer Protection Act. At the conclusion of Vertecs' case in chief, the trial judge, pursuant to CR 41(b)(3), found that Vertecs presented no evidence of any unfairness or deception under the Consumer Protection Act and dismissed this claim.[1] The court also dismissed the claims against Parker and Zefkeles without considering whether RCW 48.15.040(2) was violated because it found that such violation, if it occurred, would not have been a proximate cause of Vertecs' loss.

Vertecs assigns error to: (1) the dismissal of its action on the CR 41(b)(3) motion, (2) the findings and conclusions relating to the availability of insurance from an authorized insurer and the lack of proximate cause, (3) the denial of additional time to respond to the motion for summary judgment, and (4) the granting of summary judgment in favor of Spence Pitts.

Prior to 1971, Parker had obtained coverage for Vertecs from Lloyd's Underwriters in London (Lloyd's). Lloyd's is a surplus line insurer not authorized to do business in the state of Washington. This type of coverage is commonly referred to as a Lloyd's Broad Form Property Damage Liability Policy (Lloyd's Broad Form). This was the broadest

---

[1]Vertecs has not assigned error to this finding or otherwise challenged the dismissal of this claim.

and most desirable coverage for Vertecs. In 1971, Lloyd's declined to renew the Vertecs policy.

Parker then placed the coverage with Safeco using a domestic broad form of coverage. Safeco is authorized to transact general casualty insurance business in Washington. In 1972, Parker renewed the Safeco coverage. In 1973, Safeco refused to renew coverage, as did Lloyd's.

Zefkeles contacted approximately seven authorized insurance companies to determine if they would provide either Lloyd's or domestic broad form coverage. Each company declined to do so. Zefkeles found no authorized insurance companies willing to provide broad form coverage for Vertecs in 1973.

Zefkeles concluded that appropriate coverage for Vertecs was not available from authorized insurers. His conclusion was based upon (1) his past experience with Vertecs, (2) his knowledge from dealings with insurers for other construction clients, (3) his unsuccessful calls to authorized companies which he believed would be most likely to consider the Vertecs risk, and (4) his knowledge of underwriting standards.

In 1973, Parker placed the Vertecs coverage through Spence Pitts, a surplus line broker. The coverage was by All–Star policy SA 07695, a Lloyd's Broad Form. When this policy expired in 1974, Parker, through Spence Pitts, renewed the coverage by All–Star policy SL 01769. Prior to the 1974 All–Star renewal, Zefkeles did not call any authorized insurer specifically to request coverage for Vertecs. Rather, he relied upon his experience to conclude that appropriate coverage by Lloyd's Broad Form was not available to Vertecs from authorized insurers.

Based upon the 1973, 1974, and March 31, 1975, All–Star annual statements, the Washington Insurance Commissioner ordered All–Star to immediately stop issuing new or renewal insurance policies in Washington as of August 19, 1975. Because of this order, Zefkeles asked Spence Pitts to move Vertecs' insurance coverage to another company. Spence Pitts replaced the All–Star coverage with Lloyd's

effective October 4, 1975. The Washington Insurance Commissioner later allowed All–Star to recommence writing insurance policies in Washington subject to certain restrictions.

A number of opinions were expressed regarding the financial soundness of All–Star in October of 1974. Spence Pitts took the position that, based on the 1973 National Association of Insurance Commissioners' Report and the 1974 Best's Insurance Report, All–Star was sound. Zefkeles stated that although he believed it was primarily Spence Pitts' responsibility to review All–Star's financial condition, he believed the 1974 Best's Insurance Report showed All–Star was financially sound in the fall of 1974.

Vertecs first challenges finding of fact 18 and conclusion of law 3.

> Vertecs' injury resulted from the insolvency of All–Star in 1977 and there was no evidence that the injury resulted from any error or omission of Parker or that any action by third–party defendants would or could have avoided the injury.

Finding of fact 18.

> With respect to Vertecs' claim of violation of RCW 48.15.040(2), proximate cause is a necessary element of Vertecs' claims of negligence per se and per se violation of the Consumer Protection Act. Even assuming that a statutory violation were shown, Vertecs made no showing that the actions it contends were necessary to comply with the statute would have resulted in coverage for Vertecs from an authorized insurer. The court does not consider it necessary to determine and has not determined whether RCW 48.15.040(2) was violated.

Conclusion of law 3.

Specifically, Vertecs contends that Parker's alleged failure to comply with the statutory requirements for procuring insurance from an unauthorized insurance company constitutes negligence per se and that Parker is therefore liable for all losses resulting from the unauthorized insurance company's failure to fulfill its obligation under the insurance policy.

RCW 48.15.040 provides:

> "Surplus line" coverage. If certain insurance coverages cannot be procured from authorized insurers, such coverages, hereinafter designated as "surplus lines," may be procured from unauthorized insurers subject to the following conditions:
>
> . . .
>
> (2) The insurance must not be procurable, after diligent effort has been made to do so from among a majority of the insurers authorized to transact that kind of insurance in this state.

RCW 48.15.040(2).

RCW 48.15.040 is not a model of clarity. It does not make clear who must make the diligent effort to procure particular insurance coverage from authorized insurers. Nor does it state whether "kind of insurance," means a classification of insurance, a particular form of insurance, or a particular policy provision. It is also unclear whether "from among a majority of [authorized] insurers" refers to contacting 51 percent of casualty insurers or some lesser number which would permit a professional opinion that authorized insurers would not provide the coverage. There are other ambiguities which will provide stimulus for lawyer ingenuity and legislative clarification. We need not reach these issues, however, to resolve this case.[2]

 In order to show common law negligence, a plaintiff must establish evidence of the existence of a duty, breach of that duty, proximate cause between the breach and the injury, and resulting damage. *Davis v. Globe Mach. Mfg. Co.,* 102 Wn.2d 68, 73, 684 P.2d 692 (1984). In order to predicate liability upon violation of a statute, there must be substantial evidence that the violation was the proximate cause of the injury. *Ward v. Zeugner,* 64 Wn.2d 570, 574, 392 P.2d 811 (1964); *Currie v. Union Oil Co.,* 49 Wn.2d 898, 901, 307 P.2d 1056 (1957); *Sadler v. Wagner,* 5 Wn. App. 77, 82, 486 P.2d 330 (1971). If an event would have

---

[2]In light of our resolution, we also need not address the motions raised by the parties.

occurred regardless of the defendant's conduct, that conduct is not the proximate cause of the plaintiff's injury. *Davis v. Globe Mach. Mfg. Co., supra* at 74; *Ross v. Altvater*, 72 Wn.2d 63, 65, 431 P.2d 701 (1967); *Litts v. Pierce Cy.*, 9 Wn. App. 843, 849, 515 P.2d 526 (1973). When the operative facts are undisputed and the inferences therefrom are clear, the question of proximate cause is a question of law rather than fact. *Litts v. Pierce Cy., supra* at 848.

The trial court found that the appropriate form of coverage for Vertecs was the Lloyd's Broad Form and that there was no evidence from which it could be found that Lloyd's Broad Form coverage was available through an authorized insurer in the years 1973 and 1974 or that any authorized insurer would have accepted Vertecs' risk. The trial court also found no evidence that All–Star was financially unsound in 1973 or 1974 or that its subsequent insolvency was reasonably foreseeable. These unchallenged findings are verities on appeal and support the challenged finding and conclusion. No evidence was presented that Vertecs' injury would not have occurred if Parker had taken certain steps prior to placing Vertecs' insurance with All–Star. Therefore, placing of the insurance with All–Star was not the proximate cause of Vertecs' loss. Dismissal of Vertecs' claims for negligence and negligence per se was proper.

Vertecs next contends that the civil motions judge erred in entering summary judgment for Spence Pitts because the following issues of fact as to potential violations of the surplus line statutes were disputed: (1) whether Spence Pitts complied with RCW 48.15.090(1)[3] requiring that surplus line insurance not be placed with financially unsound

---

[3]RCW 48.15.090(1) provides:

"Solvent insurer required. (1) A surplus line broker shall not knowingly place surplus line insurance with insurers unsound financially. The broker shall ascertain the financial condition of the unauthorized insurer, and maintain written evidence thereof, before placing insurance therewith. The broker shall not so insure with any insurer having less capital and surplus or combined capital funds than the minimum amounts required for an admitted multiple line insurer in accordance with RCW 48.05.340 as now or hereafter amended, . . ."

insurers; (2) whether Spence Pitts complied with RCW 48.15.040(2) requiring a diligent search among authorized insurers; and (3) whether Spence Pitts complied with RCW 48.15.040(5)[4] requiring surplus line brokers to submit an affidavit from an unauthorized company.

If insurance cannot be procured from authorized insurers, coverage may be obtained from unauthorized insurers (*i.e.*, surplus line) subject to several conditions. RCW 48.15.090(1) appears to place two duties upon a surplus line broker such as Spence Pitts. The broker must ascertain and maintain written evidence of the financial condition of the surplus line company and must not knowingly place surplus line insurance with a company that is financially unsound.

The version of RCW 48.05.340 which was in effect at the time this action arose required insurance companies dealing in multiple lines to maintain $650,000 in paid–in capital stock or surplus and $650,000 in additional surplus. Best's Insurance Report for 1975 states that as of December 31, 1974, All–Star had paid–in capital in the amount of $2,083,000 and net surplus in the amount of $1,020,281. Both amounts are well over the statutory requirements for companies authorized to do business in the state of Washington. Spence Pitts relied upon Best's in evaluating All–Star for the policies issued in 1973 and 1974. There is no evidence suggesting that Best's evaluation of All–Star was in any way incorrect. At the time Spence Pitts placed Vertecs' insurance, All–Star met the statutory requirements for a financially sound surplus line company.

Vertecs also contends that Spence Pitts violated its common law duty to place insurance with a financially sound company. In addition to the statutory requirements, an insurance broker has a common law duty to his insured not to negligently place insurance in a company which he

---

[4]RCW 48.15.040(5) provides:

"At the time of the procuring of any such insurance an affidavit setting forth the facts referred to in subsections (2) and (3) of this section must be executed by the surplus line broker. Such affidavit shall be filed with the commissioner within thirty days after the insurance is procured."

knows or should know is presently insolvent. *Beckman v. Edwards,* 59 Wash. 411, 412–13, 110 P. 6 (1910). Clearly, Spence Pitts did not violate this duty. No evidence was presented that Spence Pitts knew or should have known that All–Star was insolvent at the time the policy was issued. In fact, All–Star was solvent at the time of placement and remained so for 2 years, until after the Sternoff claim arose. *See Beckman v. Edwards, supra* at 412.

As to Spence Pitts' alleged violation of RCW 48.15-.040(5), the affidavits and depositions before the civil motions judge did not demonstrate violation of the statute as a proximate cause of Vertecs' loss.

Finally, Vertecs contends that the civil motions judge erred in refusing to grant its request for additional time to respond to Spence Pitts' motion for summary judgment. Vertecs contends that it should have been given time to obtain All–Star's monthly operating statements.

█ The record on appeal contains no formal motion by Vertecs requesting a continuance of the summary judgment hearing. In its memorandum in opposition to summary judgment, Vertecs argued that summary judgment should be denied because there were disputed issues of material fact or alternatively, a continuance should be granted to permit Vertecs to pursue further discovery. Where a party has shown a good reason why certain evidence cannot be obtained in time for a summary judgment proceeding, the trial court has a duty to give the party a reasonable opportunity to complete his record before ruling on the motion, especially where the continuance would not result in a further delay of the trial. *See Cofer v. County of Pierce,* 8 Wn. App. 258, 262–63, 505 P.2d 476 (1973). The issue, then, is whether the cited evidence would present a genuine issue of material fact.

The civil motions judge had before him the Best's Insurance Reports for 1974 and 1975. Although the 1975 report indicated a decline in All–Star's assets from the previous year, All–Star was at all times financially stable within the meaning of RCW 48.15.090(1). The 1975 report was a com-

pilation of the data for the entire year and contained the evidence Vertecs sought to discover. As a practical matter, even if Vertecs had been given the additional time to pursue this discovery, the evidence would not have raised a genuine issue of material fact. The trial court did not err in granting Spence Pitts' motion for summary judgment.

Affirmed.

WILLIAMS and COLEMAN, JJ., concur.