[No. 10135–1–II. Division Two. April 26, 1988.]

PATRICIA THOMPSON, *as Personal Representative,* ET AL,
*Appellants,* v. GAYLE DEVLIN, ET AL,
*Respondents.*

*Patrick K. Daly,* for appellants.

*Timothy R. Gosselin* and *Burgess, Kennedy, Fitzer & Strombom, P.S.,* for respondent Devlin.

*Katherine C. Franklin, C. William Bailey,* and *Lane, Powell, Moss & Miller,* for respondents First Free Methodist Church, et al.

REED, C.J.—Plaintiffs, Patricia Thompson and Gregory Black, appeal a summary judgment that dismissed Gayle Devlin and the Tacoma Public School District and Jeanmarie Barthel and the First Free Methodist Church from plaintiffs' suit for the wrongful death of their daughter, Holly Black. We affirm as to Barthel and the Church and reverse as to Devlin and the School District.

Eighty–three–year–old Friedrich Achziger's westbound automobile struck Holly Black while she was in the north–south crosswalk on South 12th at its intersection with Moorelands Drive in Tacoma. At the time of the accident, Holly was proceeding southerly toward the DeLong Elementary School. She was part of a group being escorted to the intersection by Jeanmarie Barthel, an employee of the Little Friends Child Care Center. Barthel had given Holly and Patrick O'Dell permission to precede her and the main body of children to the intersection. Once there, Holly and Patrick were to wait at the curb until signaled to cross by the crossing guard.

Gayle Devlin, an adult crossing guard employed by the Tacoma Public School District, stood at the curb opposite that at which Holly and Patrick waited. As the traffic light

turned to green and to "walk" for the children, Devlin stepped into the intersection and extended a "stop" flag as a signal for them to cross the street. She had observed Achziger's oncoming car, but believed that he would come to a stop. As the children started across, Devlin realized that Achziger was not going to halt, and shouted at the children to turn back. Patrick returned safely. Holly did not. Despite the red traffic signal facing him, other stopped vehicles, and Devlin's extended flag, Achziger, who never decreased his speed of approximately 30 miles per hour, proceeded through the crosswalk, striking Holly.

In their affidavits supporting summary judgment, Devlin, Barthel, and a witness, Inez Blair, state that Achziger gave no indication that he would not stop. Both Devlin and Barthel concede that they knew that this particular crossing was extremely dangerous. During her tenure there, Devlin witnessed red light violations "all the time," *i.e.*, "at least four times a day." Witness Randall Hodges, a Tacoma police officer, who had just passed through the crosswalk in pursuit of a violator, shared this opinion. He also stated that Achziger proceeded another 50 feet "past the intersection" after striking Holly. A police diagram shows this distance as approximately 100 feet. Witness Brenda Lee Sexton stated her belief that neither Barthel nor Devlin could have prevented the accident. However, she gave some answers in her deposition that are equivocal, to say the least, and that could be construed to mean that Achziger appeared to be oblivious to his surroundings as he approached the intersection.[1]

---

[1] Examples of her testimony are as follows:

A So I noticed this car with that old man driving it came driving down the road here, and he paid no attention to, you know, the red light, and he went right through this light.

. . .

Q When did you first see that man?

A When he hit the little girl. I saw the car, okay. I didn't see the man until he got out of the car, and I know that he had an older lady in the car. I'm sure it was probably his wife. But I didn't see him until he got out of the car. Like I said, he didn't seem aware of what had happened, he didn't seem

Plaintiffs also produced the affidavit of W.A. Fiala, an accident reconstructionist. Mr. Fiala opined that, even if Achziger had applied his brakes from the point at which Devlin first noticed his vehicle (86 feet), he would have been unable to halt short of the crosswalk. Finding no genuine issue of material fact, the trial court granted defendants' motion for summary judgment. The court also found that any negligence on the part of the defendants would have been superseded by that of Achziger. Plaintiffs appeal.

In reviewing a summary judgment, we place ourselves in the position of the trial court. *Del Guzzi Constr. Co. v. Global Northwest Ltd.*, 105 Wn.2d 878, 882, 719 P.2d 120 (1986). We consider the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Del Guzzi Constr. Co. v. Global Northwest Ltd.*, *supra. See also Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate only if the pleadings, depositions, admissions, and affidavits demonstrate that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. "[S]ummary judgment is not appropriate when reasonable minds might reach different conclusions". *Hartley v. State*, 103 Wn.2d 768, 774, 698 P.2d 77 (1985).

---

concerned—well, he must have been in shock, but I mean he wasn't crying or anything like that. He was just picking things up that belonged to the little girl, which I thought was odd.

Q When did you first see his car?

A When he hit the little girl.

Q Where [sic] you able to estimate the speed of his car?

A It seemed to me like he was going—you know, in a school zone, I really slow down, but it seemed to me he was going 30, I would say.
He was just—like he was in a daze or whatever, and he wasn't paying any attention. He was just driving, you know, not aware of anything that was going on around him, in his own little world.

. . .

A What I remember is the guy did not even hesitate at all. He did not slow down. He kept a steady rate of speed that he was going from on back here. It didn't phase him, the light. It was light, [sic] like I said, like he was in a daze. He didn't even know there was a light there.

### Devlin/School District Summary Judgment

Plaintiffs' principal contentions are that they succeeded in raising genuine issues of the negligence of Devlin and the School District and that summary judgment was improper. We agree.

To sustain a complaint for negligence, a plaintiff must show duty, a breach of that duty, and injury. *Hartley v. State,* 103 Wn.2d at 777. In addition, the plaintiff must show that the breach of duty was a proximate cause of the injury. Proximate cause consists of two elements—cause in fact and legal causation. *Hartley v. State, supra.* Cause in fact is a cause that produces the complainant's injury. *Hartley,* 103 Wn.2d at 778. "But for" such a cause, the injury would not have occurred. *Hartley v. State, supra.* On the other hand, legal causation is a determination that liability should attach as a matter of law. *Hartley,* 103 Wn.2d at 779. The determination of proximate cause is usually a matter for the trier of fact. *Petersen v. State,* 100 Wn.2d 421, 436, 671 P.2d 230 (1983). It may be a question of law for the court, however, if the facts are undisputed, the inferences are plain and inescapable, and reasonable minds could not differ. *Petersen v. State, supra.*

Plaintiffs argue that certain Washington Administrative Code provisions were breached by Devlin and that she and the School District were thus guilty of negligence per se. Negligence per se is a concept that permits a court to impose a standard of conduct based on a particular statute or administrative regulation. *Herberg v. Swartz,* 89 Wn.2d 916, 922, 578 P.2d 17 (1978); *Kness v. Truck Trailer Equip. Co.,* 81 Wn.2d 251, 501 P.2d 285 (1972). If a regulation or statute provides that under certain circumstances particular acts shall or shall not be done, it may be interpreted as fixing a standard from which it is negligence to deviate. *Herberg v. Swartz, supra.* Plaintiffs contend that the evidence and reasonable inferences therefrom, when viewed in the light most favorable to plaintiffs, demonstrate violations of certain of these regulations by both Devlin and the School District: WAC 392–151–145 states that a school

patrol member stationed at an intersection with a traffic signal shall be "certain that all approaching cars are stopping", before permitting students to cross. WAC 392–151–125 permits the use of a single school patrol member on a "narrow street with light vehicular traffic" and little or no turning problems. Plaintiffs argue that this latter regulation implies that crossings that do not fit the limited description shall be guarded by at least two school patrol members. WAC 392–151–135 outlines the crossing procedures at posts requiring two patrol members, referring to one as the "sender" and the other as the "receiver."

We disagree with defendants' contention that these regulations somehow do not apply to adult patrol members such as Devlin. Read as a whole, chapter 392–151 clearly includes adult supervisors as members of the school safety patrols. WAC 392–151–055 states that "[s]chools possess the authority to appoint adults as supervising *members* of a school patrol." (Italics ours.) Five other sections of the chapter refer to adult supervisors as *members* of the school patrols. *See* sections –010, –020, –060, –065, and –140. The sections that specifically apply only to student patrol members concern such things as parental permission to serve, the relationship between adult and student members, the qualifications and selection of student members, and the special scheduling needs and early dismissal requirements for student members. The sections that are concerned with the duties of the patrol and procedures to be followed at crossing points, including WAC 392–151–145 (concerning operation at an intersection with a traffic signal) refer to "patrol members," without further qualification. Moreover, it would require a strained and illogical interpretation to hold that safety rules designed to deal with hazards that are more likely to be encountered at the busier crossings where adults are present apply only to student patrol members.

We believe the regulations of WAC 392–151 clearly satisfy the test adopted in *Kness v. Truck Trailer Equip. Co., supra,* and should be adopted as the standard of care

of a reasonable person, because the regulations were intended to:

> (a) to protect a class of persons which includes the one whose interest is invaded, and
> (b) to protect the particular interest which is invaded, and
> (c) to protect that interest against the kind of harm which has resulted, and
> (d) to protect that interest against the particular hazard from which the harm results.

*Goucher v. J.R. Simplot Co.,* 104 Wn.2d 662, 669–70, 709 P.2d 774 (1985).

These regulations clearly were intended to protect young students such as Holly and Patrick from bodily injury and/or death by traffic accident. WAC 392–151–005 refers to the appointment and operation of school patrols "which are in the best interest of student safety." WAC 392–151–010 states that the patrol is to assist members of the student body "in the safe and proper crossing of streets, highways, and roads". The kind of harm Holly sustained is exactly the kind against which the regulations were designed to operate, and a violation should be considered negligence per se.

 The defendants are correct, however, in their contention that a strict interpretation of WAC 392–151–145 would require a patrol member to insure or guarantee that all approaching cars are stopped before signaling for a pedestrian crossing. Unless this regulation is read to include the term "reasonably" (as in "reasonably certain"), a patrol member could never permit pedestrian movement at a congested intersection.[2] Thus, a literal reading would destroy the purpose and effectiveness of the regulation. *See Cooper's Mobile Homes, Inc. v. Simmons,* 94 Wn.2d 321, 326, 617 P.2d 415 (1980) (statute should not be construed so as to reach an absurd result). *See also Wood v. Chicago, M., St. P. & Pac. R.R.,* 45 Wn.2d 601, 610, 277 P.2d 345, 283 P.2d 688 (1954) (plaintiff's failure to reduce speed to 25

---

[2]This would be particularly true if the walk sign is of short duration, as was the case here (6 seconds).

m.p.h. as required in the Cosmopolis city limits did not constitute contributory negligence per se because the sign indicating the city limits and the reduced speed was posted well beyond the scene of the accident). *See also Currie v. Union Oil Co.,* 49 Wn.2d 898, 307 P.2d 1056 (1957) (two outward–swinging doors and one inward–swinging door complied sufficiently with building code requirement that exit doors swing outward). A statute or regulation should not be construed in absolute terms where a literal interpretation would require expert proficiency by an ordinary citizen. *See Mina v. Boise Cascade Corp.,* 104 Wn.2d 696, 705, 706, 710 P.2d 184 (1985); *Petersavage v. Bock,* 72 Wn.2d 1, 8, 431 P.2d 603 (1967). Devlin ought not to be held to an expert standard in analyzing the traffic situation. Rather, the regulation should be construed to require only a reasonable interpretation of the circumstances confronting her at the time.

When all of the evidence and the reasonable inferences therefrom are viewed in a light most favorable to plaintiffs, genuine issues of fact were created with regard to these defendants' breach of the duties imposed by these regulations. It was error to grant summary judgment.

We also agree with plaintiffs' contention that the evidence raised genuine issues of common law negligence. Although some witnesses stated that Achziger was not traveling at an excessive rate of speed, was not driving erratically, and that Devlin was not at fault, this information does not resolve the issue of whether Devlin's belief that Achziger was stopping was reasonable or prudent.[3] *See Gordon v. Deer Park Sch. Dist. 414,* 71 Wn.2d 119, 122, 426 P.2d 824 (1967). Militating against summary judgment is the fact that Achziger apparently never slowed from his

---

[3]Fiala's contention, that Achziger could not have stopped short of the crosswalk at the time that Devlin noticed that he was not stopping, does not qualify as a material fact. It may tend to show that Achziger was culpable; but it sheds no light on the reasonableness of Devlin's conduct. Thompson and Black have shown no nexus between the actual stopping distance of the car and the reasonableness of Devlin's belief that the Achziger car was stopping.

speed of 30 m.p.h. Rather, he continued his inexorable course, seemingly oblivious to his surroundings. In addition, questions were raised regarding the reasonableness of (1) employing only one guard at this busy and dangerous crossing, and (2) Devlin's position, as per instruction from the School District, on the opposite side of the street from the children.

There is also the issue of whether she signaled the children to proceed because she knew they had only 6 seconds to cross four lanes of travel.[4] There were, thus, genuine issues of material fact that should not have been resolved by summary judgment.

▪ Devlin and the School District also argue that Devlin's duty was merely to refrain from willfully or wantonly causing injury to children. They contend that a school stands in loco parentis to a child in its custody, and that, like a parent, it is immune from liability based on ordinary negligence. We disagree. The correct rule is that a school is liable for its acts or omissions according to the normal rules of tort law. *Rhea v. Grandview Sch. Dist. JT 116–200,* 39 Wn. App. 557, 559–60, 694 P.2d 666 (1985).

▪ Finally, Devlin and the School District argue that Achziger's negligence was a superseding cause of Black's

---

[4]In her deposition she states:

Q The light cycle, do you know how long you had from the time that the "Walk" sign went on until the "Don't Walk" sign went on?

A Six seconds.

Q How long did it take for a child to walk across the street?

A About three.

Q Did you have sufficient time with six seconds on the walk cycle to observe the traffic—

A Not really.

Q I was going to go on and say,—observe the traffic, put up the flag, and motion the children to cross?

A Not really, no.

Q Did you complain about that?

A Always.

Q Now, who did you complain to?

A Our principal.

Q Did you ever complain to the City of Tacoma?

A I didn't, no.

death. We disagree. In determining whether an intervening act is a superseding cause, a court must consider whether (1) the intervening act created a different type of harm; (2) the intervening act constituted an extraordinary act; and whether (3) the intervening act operated independently. *Campbell v. ITE Imperial Corp.,* 107 Wn.2d 807, 812–13, 733 P.2d 969 (1987); *Smith v. Acme Paving Co.,* 16 Wn. App. 389, 558 P.2d 811 (1976). Here, Achziger's negligence created the kind of harm that could be expected if Devlin performed negligently. Also, his negligence was neither an extraordinary act, as witness the many violators observed by Devlin, nor an act that was necessarily independent of Devlin's conduct.

Inasmuch as Thompson and Black have raised genuine issues of fact that cannot be dismissed under any theory, the court erred in granting Devlin and the School District a summary judgment.

### BARTHEL/CHURCH SUMMARY JUDGMENT

Barthel customarily accompanied children to the intersection at which Holly Black was killed. Although there is no assertion that Barthel was required to do this, she and the Church still may be liable for negligence. *See Roth v. Kay,* 35 Wn. App. 1, 4, 664 P.2d 1299, *review denied,* 100 Wn.2d 1026 (1983) (voluntary assumption of a duty may give rise to liability for negligence). However, assuming that Barthel breached her duty of ordinary care by failing to accompany Black to the intersection, Barthel's negligence was not a proximate cause of Black's death.

First, it cannot be said that "but for" Barthel's negligence, the injury would not have occurred. Second, even if actual causation is conceded, Barthel's conduct was not the legal cause of Black's death. Barthel's negligence created a risk that Black would cross the street contrary to crossing signals (guard or electric light). This did not occur. Instead, Achziger struck Black while she properly obeyed the signals. Achziger's actions, therefore, are a superseding cause

that insulate Barthel and the Church from liability.[5] *See Campbell,* 107 Wn.2d at 812. His actions were independent of any situation created by Barthel's negligence. *Campbell,* 107 Wn.2d at 812–13. Thus, the court properly granted a summary judgment for Barthel and the Church.

In sum, we hold that the court erred in granting summary judgment to Devlin and the School District, because Thompson and Black succeeded in raising a genuine issue as to the reasonableness of Devlin's conduct. We also hold that the court correctly ordered a summary judgment for Barthel and the Church, because Barthel's negligence, if any, was superseded by that of Achziger. The summary judgment for Devlin and the Tacoma Public School District is reversed, and the summary judgment for Barthel and the First Free Methodist Church is affirmed.

PETRICH and ALEXANDER, JJ., concur.

---

[5]The same can be said for Devlin's actions, if they should be found negligent by the fact finder.