[No. 57451-5-I. Division One. April 16, 2007.]

PHIL GROSS, *Appellant*, v. KENYON SUNDING ET AL., *Respondents.*

*Charles T. Paglialunga* and *James A. Harris* (of *Paglialunga & Harris, PS*), for appellant.

*Mark E. Mills* and *Claudia Shannon* (of *Law Offices of William D. Garcia*), for respondents.

¶1 APPELWICK, C.J. — Phil Gross and Kenyon Sunding were involved in an accident. Gross filed his complaint shortly before the three year statute of limitations ran on his claim. Sunding was out of state but indicated that he would accept service on his return. Gross failed to serve Sunding within the statutorily provided 90 day tolling period. Gross argued that Sunding had entered into an alternate service agreement, waived the affirmative defense of insufficient service, and was estopped from claiming insufficient service. The trial court granted Sunding's motion for summary judgment based on insufficient service. We affirm.

## FACTS

¶2 Gross and Sunding were involved in a parking lot collision on February 16, 2002. Gross filed his complaint on February 11, 2005, within the three year statute of limitations provided by RCW 4.16.080(2). Filing of the complaint

commenced the suit and tolled the statute of limitations for 90 days under RCW 4.16.170, allowing for service of process to be completed. This allowed Gross until May 11, 2005 to effectuate valid service even though the statute of limitations ran on February 16, 2005. A process server attempted service at Sunding's residence for the first time on February 12, 2005 without success. Service was again attempted on February 13, 2005. A third attempt was made to serve Sunding at his residence on February 18, 2005.

¶3 At some point, process server C. Boddy telephoned Sunding and learned that the defendant was in Oregon and would probably return to Washington on March 8, 2005. Boddy stated that Sunding agreed to accept service upon his return. Process servers attempted to serve Sunding at his residence on March 8 and 14, April 5, 10, 11, 14, 17, 22, and 25, and May 1 and 6.

¶4 On May 11, 2005, the final day of the 90 day tolling period, Boddy again spoke with Sunding, who was in Oregon and said he would return in a week or week and one-half. Sunding apparently mentioned that Boddy had not called him. Boddy replied that he had left messages but Sunding had not returned the calls. According to Boddy, Sunding "was very vague about what day he would be back from Oregon, and would accept service." Further attempts to reach Sunding were fruitless, including several telephone calls and messages.

¶5 On June 5, 2005, Boddy spoke with Sunding, who said he would be in town in the next week and a half and would accept service. Boddy left messages for Sunding on June 9, 13, and 14, which were never returned. On June 17, 2005, Gross served the secretary of state under RCW 46.64.040, the nonresident motorist statute. A copy of the summons and complaint were sent "Certified" mail to Sunding's residence. On June 22, 2005, Sunding filed his answer to the complaint, alleging the affirmative defense of "insufficiency of service of process," but did not include a statute of limitations defense. On July 26, 2005, a process server arrived at Sunding's residence and knocked until

someone responded from behind the door. Sunding identified himself but refused to open the door to accept the summons and complaint. The process server called Sunding, who still refused to open the door. The process server knocked for almost an hour, to no avail. He stated that he could hear Sunding making calls and telling someone that a process server was trying to serve him. He eventually slid the documents under the door. As he did this, Sunding grabbed them and pulled them the rest of the way under the door. The process server then advised Sunding he had been served.

¶6 On August 31, 2005, Sunding filed a motion for summary judgment alleging the action was time barred based on the failure to serve the summons and complaint within 90 days of filing and before the running of the statute of limitations. The trial court granted summary judgment. Gross filed a motion for reconsideration to which the court responded with a request for further briefing on the applicability of an evidentiary hearing to assess credibility and draw inferences. After receiving the additional information, the trial court denied reconsideration because Gross had failed to make any showing of proper service as required in the face of a challenge to personal jurisdiction. Gross appeals his summary judgment.

## ANALYSIS

¶7 When reviewing a summary judgment order, the appellate court undertakes the same inquiry as the trial court. *Thompson v. Peninsula Sch. Dist. No. 401*, 77 Wn. App. 500, 504, 892 P.2d 760 (1995). Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c). The moving party bears this burden of proof. *LaPlante v. State*, 85 Wn.2d 154, 158, 531 P.2d 299 (1975). "A material fact is one upon which the outcome of the litigation depends." *Barrie v. Hosts of Am., Inc.*, 94 Wn.2d 640, 642, 618 P.2d 96 (1980). The nonmoving party

cannot rely on speculation but must assert specific facts to defeat summary judgment. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). All facts and inferences are considered in the light most favorable to the nonmoving party. *Ashcraft v. Wallingford*, 17 Wn. App. 853, 854, 565 P.2d 1224 (1977).

¶8 In a challenge to personal jurisdiction based on insufficient service of process, the plaintiff has the burden of proof to establish a prima facie case of proper service. *Woodruff v. Spence*, 76 Wn. App. 207, 209-10, 883 P.2d 936 (1994). Gross cannot produce evidence of sufficient service. To be sufficient, service should have been effectuated according to the required statutory procedure by May 11, 2005. The documentation provided by Gross clearly states, "ABC Legal Services, Inc. is unable to serve the defendant(s)" as late as June 9, 2005. Because "[a]n untimely service of process is necessarily insufficient," Gross has failed to establish a prima facie case for proper service. *Adkinson v. Digby, Inc.*, 99 Wn.2d 206, 209, 660 P.2d 756 (1983). In order to ward off summary judgment due to insufficient service, Gross alleges valid service based on several alternate theories.

## 1. Alternate Service Agreement and Waiver

¶9 Gross argues that Sunding entered into an enforceable alternate service agreement on March 8, 2005, or May 11, 2005, when he agreed to accept service upon his return from Oregon. In a previous case an alternate service agreement was allowed and considered sufficient as to the manner of service, if not specifically the timeliness: "[W]e can discern no reason of public policy why a defendant should not be able to authorize delivery in a manner not enumerated in the statute." *Thayer v. Edmonds*, 8 Wn. App. 36, 41-42, 503 P.2d 1110 (1972).

¶10 In *Thayer*, the process server called the defendant at 11:30 PM on the last day for valid service. *Id.* at 40. When the defendant said she could see no reason that the papers could not be delivered the next day, the process

server insisted the delivery needed to occur before midnight. *Id.* at 41. He then said he would leave the papers in the door if she did not answer his knock. *Id.* She responded, "[t]hat's fine, we are not going to wait up." *Id.* at 38. The process server left the documents as agreed and service was held sufficient per the alternative agreement. *Id.* at 42.

¶11 The circumstances in *Thayer* support a finding of an enforceable alternate service agreement. The defendant was informed about the need for delivery before midnight. *Id.* at 41. The process server proposed the alternate method or manner of service—leaving the documents in the door— and the defendant agreed. *Id.* The defendant's acceptance of the terms was unambiguous. The details of the time, place, and manner of alternate service were clear and understood by both parties.

¶12 In contrast, Sunding and the process server did not reach an agreement about an alternate time and place for delivery, only the method. According to the process server, when he telephoned Sunding the first time, Sunding said he "would most likely be back March 8th 2005, and that he would accept service." During the second conversation on May 11, 2005, Sunding stated he "would be back in about a week and maybe a week and a half." Sunding merely predicted his return dates and said he would accept service upon his return. He did not commit to a return date or arrangements as to date, time, and place to receive service. This does not rise to the level of the alternate service agreement found in *Thayer*.

¶13 Further, even if these telephone conversations created an alternate service agreement, Sunding did not waive his right to object to the sufficiency of service. Waiver of insufficient service as an affirmative defense can occur when the defendant's previous behavior is inconsistent with assertion of the defense or when counsel has been dilatory in asserting the defense. *Lybbert v. Grant County*, 141 Wn.2d 29, 39, 1 P.3d 1124 (2000). Waiver requires " 'the intentional abandonment or relinquishment of a known right [and i]t must be shown by unequivocal acts or conduct

showing an intent to waive, and the conduct must also be inconsistent with any intention other than to waive.'" *Clark v. Falling*, 92 Wn. App. 805, 812-13, 965 P.2d 644 (1998) (quoting *Mid-Town Ltd. P'ship v. Preston*, 69 Wn. App. 227, 233, 848 P.2d 1268 (1993)). Gross does not provide any evidence that Sunding knew his legal right to sufficient service, what constitutes sufficient service, or that his vague statements about accepting service upon return would relinquish his right to plead insufficient service.

¶14 Sunding's first estimated date of return was March 8, 2005, well within the tolling period set to expire on May 11, 2005. Because service around March 8 would have been timely, Gross had no reason to think that Sunding was waiving his right to timely service. Gross had ample time for service before his claim would be time barred. He had no need for an alternate service agreement or waiver. The tolling period ended on May 11, 2005, the same day the process server spoke with Sunding the second time. By the time Sunding expected to return to Washington, the suit would have been time barred. At this point, Sunding had not accepted service and had not volunteered to, nor been requested to, waive the requirement for timely service. The process server does not purport to have informed Sunding about the requirements and deadlines inherent in service and the statute of limitations. No other evidence suggests that Sunding possessed this knowledge. Without such knowledge, Sunding could not have intentionally relinquished his right to proper service.

¶15 Waiver of the affirmative defense of insufficient service can arise due to a defendant's behavior after the fact as well. "A defendant's conduct through his counsel . . . may be 'sufficiently dilatory or inconsistent with the later assertion of one of these [CR 8] defenses to justify declaring a waiver.'" *Raymond v. Fleming*, 24 Wn. App. 112, 115, 600 P.2d 614 (1979) (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §1344, at 526 (1969)). In *Raymond*, defense counsel repeatedly requested more time, received two continuances, and failed to respond

to interrogatories before moving for dismissal for insufficient service. *Id.* at 114. These actions constituted a waiver of the defense. *Id.* at 115. Similarly, in *Lybbert*, the defense did not plead insufficient service, engaged in several months of discovery unrelated to a defense of insufficient service, discussed mediation, failed to respond to interrogatories inquiring about a possible insufficient service defense, and then asserted the defense after the statute of limitations had run. *Lybbert*, 141 Wn.2d at 42, 44-45. Participation in these activities was found incompatible with an insufficient service defense and resulted in a waiver of the defense. *Id.*

¶16 In contrast, Sunding pleaded insufficient service in his answer on June 22, 2005, before he had been personally served.[1] He moved for summary judgment on August 31, 2005, approximately two months after his answer. As the pleadings were timely and asserted the defense as required, Sunding was not dilatory in raising the issue. Furthermore, the only evidence of any behavior inconsistent with the affirmative defense is the purported alternative service agreement. Sunding's conduct did not waive his insufficient service defense.

¶17 Gross also argues that Sunding failed to plead statute of limitations in his answer as required by CR 8(c) and thereby waived this affirmative defense. Sunding responds that "[i]nsufficiency of process is the issue here[,] not failure to file before the expiration of the statute of limitations." A statute of limitations defense is not required because "[a]n untimely service of process is necessarily insufficient." *Adkinson*, 99 Wn.2d at 209. Insufficient service is an appropriate defense if the service did not occur within the statutory guidelines. Sunding did not need to plead a statute of limitations defense.

---

[1] Sunding presumably filed his answer because he received service through the secretary of state after Gross utilized the nonresident motorist statute on June 17, 2005.

## 2. Evasion of Service

¶18 Gross alleges that Sunding evaded service because he failed to make himself available for service after he agreed to accept service upon his return, he would not return phone calls, he disingenuously claimed the process server had not called him after their first conversation, and he refused to open his door when the process server arrived. Sunding responds that no agreement was reached, so he did not evade service.

¶19 Defendants have a duty not to evade service and to accept validly tendered service. *Thayer*, 8 Wn. App. at 41 (citing *Gumperz v. Hofmann*, 245 A.D. 622, 283 N.Y.S. 823 (1935), *aff'd*, 271 N.Y. 544, 2 N.E.2d 687 (1936)). However, defendants have no obligation to accommodate a process server. *Weiss v. Glemp*, 127 Wn.2d 726, 734, 903 P.2d 455 (1995). Gross claims that Sunding's promise to accept service required his cooperation with the process server. "Sunding's agreement to accept service prior to March 8th was an affirmative act . . . not the same as not answering his phone or door." Sunding agreed to accept service upon his return but did not coordinate a time or place with the process server. He did not agree to a date, time certain, or place for service, nor did he miss established appointments with the process server. His statement appears to have been a verbal manifestation of his agreement to perform his duty of accepting validly tendered service. He did not create any obligation beyond this duty.

¶20 Sunding's behavior was not evasive. Gross provides no evidence that Sunding's trips to Oregon were for the purpose of willful evasion or concealment. Although Sunding refused to answer the door when the process server arrived, this occurred in July, after the statute of limitations ran and Sunding had already received service through the mail. These actions cannot constitute evasion during the statute of limitations time frame. In addition, failure to come to the door for service does not constitute evasion. *Id.* Without evidence of

willful evasion or concealment prior to May 11, 2005, Gross cannot defeat summary judgment with this theory.

## 3. Estoppel

¶21 "The elements of equitable estoppel are (1) an admission, statement or act inconsistent with a claim afterwards asserted, (2) action by another in reliance upon that act, statement or admission, and (3) injury to the relying party from allowing the first party to contradict or repudiate the prior act, statement or admission." *Bd. of Regents of Univ. of Wash. v. City of Seattle*, 108 Wn.2d 545, 551, 741 P.2d 11 (1987). Equitable estoppel is not favored and therefore requires a showing of clear, cogent, and convincing evidence by the asserting party. *Colonial Imps., Inc. v. Carlton Nw., Inc.*, 121 Wn.2d 726, 734, 853 P.2d 913 (1993) (citing *Robinson v. City of Seattle*, 119 Wn.2d 34, 82, 830 P.2d 318, *cert. denied*, 506 U.S. 1028 (1992)). Gross argues that Sunding should be estopped from asserting an insufficient service defense because Sunding made promises to accept service upon his return and Gross relied upon and was damaged by those promises. Sunding responds that the telephone conversations that serve as the basis for the estoppel claim do not qualify as clear, cogent, and convincing evidence of an admission or statement required for estoppel.

¶22 The two statements upon which Gross, through his counsel, relied were made by Sunding to the process server who contacted him via telephone. The reports read, "Mr. Sunding stated he was in Oregon and would most likely be back March 8th 2005, and that he would accept service" and "[h]e was very vague about what day he would be back from Oregon, and would accept service." Gross and his counsel may have relied upon these statements, but they cannot be construed as clear, cogent, and convincing evidence of Sunding's agreement to accept untimely service.

¶23 Furthermore, Gross has not shown reasonable reliance. Sunding apparently made a statement that he would accept service upon his return. More than a month re-

mained of the tolling period if Sunding returned as projected on March 8th. Reliance on Sunding's statement that he would accept service upon his return may have been reasonable in the days immediately following his expected homecoming. However, process servers failed to contact Sunding after his expected return date. Throughout the remaining weeks of the tolling period, process servers visited Sunding's home and left messages, to no avail. Even if initially Gross could have relied reasonably upon Sunding's representations, continued reliance on the "agreement" was not reasonable in the face of repeated failed service attempts stretching for more than one month.

¶24 Gross and counsel cannot have justifiably relied upon the "vague" statements made to the process server. Agreement to accept service upon return does not provide assurance that service will not be contested. Gross and his counsel may have inferred that this acceptance of service translated to acceptance of that service as sufficient, but this interpretation is not supported by clear, cogent, and convincing evidence.

¶25 Even if Sunding agreed to accept service upon his return, he did not represent that he would not contest its sufficiency. Sunding claims that he did not know the tolling period was expiring or the legal significance of the date. Without such an understanding, Sunding's agreement to accept service upon his return was just that—agreement to take the summons and complaint when handed to him. Sunding did not make representations as to the legality of service.

## 4.  Additional Claims

¶26 Gross repeatedly refers to the "reasonable juror" and asserts his right to a jury trial to determine whether waiver, estoppel, or evasion apply to this case. The Washington Constitution provides that "[t]he right of trial by jury shall remain inviolate." WASH. CONST. art. I, § 21. However, RCW 4.44.080 stipulates that the court shall decide all issues of law. Jurisdiction is a question of law.

*Clingan v. Dep't of Labor & Indus.*, 71 Wn. App. 590, 592, 860 P.2d 417 (1993). Since proper service of process is required for jurisdiction, sufficiency of service of process is a question of law. As a result, the determination of valid service is reserved to the judge. Gross is not entitled to a jury trial on the issue of service.

¶27 Gross raises Civil Rule (CR) 2A and asserts that Sunding's defense should be stricken as a matter of law because he fails to put forth a genuine dispute over the existence or material terms of the alleged agreement. CR 2A states:

> No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

The rule requires that the stipulation be made in open court or in writing. The "agreement" at issue in this case did not conform to these requirements. As a result, the "agreement" is unenforceable under CR 2A. *Bryant v. Palmer Coking Coal Co.*, 67 Wn. App. 176, 858 P.2d 1110 (1992).

¶28 Finally, Gross requests that the court grant a continuance for additional discovery if it disagrees with his claims of waiver, estoppel, and evasion. He claims that Sunding has not offered any testimony on these subjects and that he would not deny the charges under oath. Gross requests this continuance under CR 56(f), which provides,

> Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Gross made this request for the first time in his motion for reconsideration. The trial court did not grant this request in its order on motion for reconsideration. Denial of a motion

for continuance will be upheld absent a showing of manifest abuse of discretion. *Turner v. Kohler*, 54 Wn. App. 688, 693, 775 P.2d 474 (1989) (citing *Lewis v. Bell*, 45 Wn. App. 192, 196, 724 P.2d 425 (1986)).

¶29 The trial court can deny a continuance under CR 56(f) if "(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact." *Turner*, 54 Wn. App. at 693 (citing *Lewis*, 45 Wn. App. at 196; *Sternoff Metals Corp. v. Vertecs Corp.*, 39 Wn. App. 333, 341-42, 693 P.2d 175 (1984)). Only one of the qualifying grounds is needed for denial. *Pelton v. Tri-State Mem'l Hosp.*, 66 Wn. App. 350, 356, 831 P.2d 1147 (1992). Since Gross does not demonstrate a good reason for delay in obtaining evidence from Sunding, denial is proper. Furthermore, Sunding admits that he has not denied the statements within the process servers' declarations and would not deny them if deposed. As a result, a deposition would not yield additional evidence or an issue of material fact. The trial court's denial of a continuance to depose the defendant was not a manifest abuse of discretion.

¶30 We affirm.

BAKER and COX, JJ., concur.