[No. 22058–6–I.   Division One.   July 10, 1989.]

ARTHUR TURNER, *Appellant,* v. DELL KOHLER, ET AL, *Respondents.*

*Carlos M. Sosa III,* for appellant.

*Douglas Graham,* for respondents.

WINSOR, J.—Arthur Turner appeals the order granting Dr. Dell Kohler's motion for summary judgment in a medical malpractice action. He contends that Kohler's affidavits did not refute his allegations, thus summary judgment was inappropriate. Turner also contends that the trial court abused its discretion when it did not continue the motion so that he could obtain the affidavit of his medical expert. We affirm.

On August 31, 1984, Turner saw Kohler for a complete physical examination. On September 8, 1984, Turner suffered a stroke. Dr. John Huddlestone, a board certified neurologist, diagnosed a small right frontal intercerebral hemorrhage (stroke or CVA) and hypertension. Huddlestone put Turner on bedrest and prescribed anti–hypertensive medication. He was released from the hospital on September 14, 1984, with a normal blood pressure. Turner received follow–up treatment from Huddlestone and Kohler.

On October 3, 1984, Turner was doing well and Huddlestone recommended to Turner "that he return gradually to normal activities and continue to see Dr. Kohler for blood pressure control and weight reduction." Turner went on a strenuous hunting trip on October 14, 1984. That night Turner suffered a second stroke.

In August 1987, Turner filed a complaint against Kohler alleging medical malpractice. Turner alleged that Kohler did not take Turner's blood pressure during the August 31, 1984, physical examination, and that his failure to do so caused his October 14, 1984, stroke.

Kohler filed a motion for summary judgment in November 1987, noting the motion for December 10, 1987. Kohler continued the motion twice at Turner's request. Kohler, a board certified family practitioner, filed an affidavit that states in part:

> I am familiar with the standard of care expected of family practice doctors in the State of Washington acting under the same or similar circumstances. It is my opinion that all of the care and treatment rendered to Arthur Turner by me and my staff was in complete conformity with that standard of medical practice to which I am held.
>
> Furthermore, based upon my training and experience, nothing which I did or did not do in my care and treatment caused Mr. Turner's CVA on October 14, 1984.

Even assuming (which I do not concede) that Mr. Turner's blood pressure was not taken during his physical examination on August 31, 1984, that did not (on a more probable than not basis) cause plaintiff's CVA on October 14, 1984. Mr. Turner was released from St. Joseph's Hospital on approximately September 14, 1984, with normal blood pressure. On September 21, 1984, his blood pressure was again normal when seen by me in my office. On approximately October 4, 1984, when Mr. Turner was seen by Dr. Huddlestone, his blood pressure was again normal, and he was advised by Dr. Huddlestone to gradually resume his normal activities. In my opinion, it would be speculation to say that anything that occurred in my care and treatment of Mr. Turner more probably than not caused Mr. Turner's CVA on October 14, 1984.

On February 11, 1988, Turner filed a medical report prepared by Dr. John Mullins. The report[1] states in part:

4. [Turner] asks whether the failure to diagnose hypertension and failure to treat hypertension just prior to his strokes might have contributed to the strokes that he had.

I have explained to him that there are risk factors insofar as a stroke is concerned. These risk factors include overweight, family background or atherosclerotic disease, increased cholesterol, cigarette smoking and hypertension.

He probably did have hypertension prior to the onset of the first stroke in 1984 and if this had been present at this time [the] proper medical procedure would be to treat the hypertension.

---

[1]Dr. John Mullins' report was considered by the trial court when it heard Kohler's motion for summary judgment. Kohler argues that Mullins' letter does not comply with CR 56(e), which requires that evidence be submitted in the form of affidavits. The appellate record, however, does not reveal a motion to strike the document before entry of summary judgment. Kohler's failure to make such a motion waives any objections to a deficiency in the report or how it was presented. *See Reese v. Sears, Roebuck & Co.*, 107 Wn.2d 563, 580, 731 P.2d 497 (1987), *overruled on other grounds in Phillips v. Seattle*, 111 Wn.2d 903, 766 P.2d 1099 (1989); *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 352, 588 P.2d 1346 (1979).

Turner's attorney also submitted an affidavit that stated in part: "Until further discovery has been taken, [Dr. Mullins' report] raises genuine issues of factual dispute, and defense Motion for Summary Judgment should be denied as a result."

On March 8, 1988, the trial court granted Kohler's motion for summary judgment.

■ A summary judgment is properly granted if the pleadings, affidavits, depositions or admissions on file show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Teagle v. Fischer & Porter Co.,* 89 Wn.2d 149, 152, 570 P.2d 438 (1977); *Meissner v. Simpson Timber Co.,* 69 Wn.2d 949, 951, 421 P.2d 674 (1966). Kohler's expert affidavit established that he was entitled to judgment as a matter of law because Kohler's actions conformed to the applicable standard of care, and even if Kohler did not take Turner's blood pressure on August 31, 1984, that did not cause Turner's October 14, 1984, stroke. Turner did not offer any competent evidence regarding the appropriate standard of care or causation, thus summary judgment was properly granted. *Young v. Key Pharmaceuticals, Inc.,* 112 Wn.2d 216, 225, 770 P.2d 182 (1989).[2]

Turner conceded at oral argument that summary judgment was properly granted on the record before the court. He contends, however, that the trial court abused its discretion because it did not order a continuance pursuant to CR 56(f) to give him more time to obtain expert medical affidavits.

---

[2]Kohler's expert affidavit was sufficient. The facts here do not present the kind of (virtually res ipsa loquitur) situation mandating some further explanation from the defendant physician presented in some cases. *See Hash v. Children's Orthopedic Hosp. & Med. Ctr.,* 110 Wn.2d 912, 757 P.2d 507 (1988) (child's leg broken during physical therapy session); *Nicholson v. Deal,* 52 Wn. App. 814, 764 P.2d 1007 (1988) (adhesive inserted during hip surgery escaped from restricter cap).

CR 56(f)[3] provides a remedy for parties who know of the existence of a material witness and show good reason why they cannot obtain the witness' affidavits in time for the summary judgment proceeding. In such a case, the trial court has a duty to give the party a reasonable opportunity to complete the record before ruling on the motion. *Lewis v. Bell,* 45 Wn. App. 192, 196, 724 P.2d 425 (1986); *Cofer v. County of Pierce,* 8 Wn. App. 258, 262–63, 505 P.2d 476 (1973).

The trial court may, however, deny a motion for continuance where: (1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact. *Lewis,* 45 Wn. App. at 196; *Sternoff Metals Corp. v. Vertecs Corp.,* 39 Wn. App. 333, 341–42, 693 P.2d 175 (1984); *see also* 6 J. Moore, *Federal Practice* ¶ 56.24, at 56–817 to 56–821 (2d ed. 1988). The trial court's grant or denial of a motion for continuance will not be disturbed absent a showing of manifest abuse of discretion. *Lewis,* 45 Wn. App. at 196; 6 J. Moore, *supra* at 56–800 to 56–804.

Turner's lawyer's affidavit did not mention CR 56(f), nor did it explicitly request a continuance. The affidavit did not state what discovery was contemplated or why the discovery could not have been pursued prior to the summary judgment proceeding. On appeal, Turner contends that his failure to formally comply with CR 56(f) is not a bar to relief.

There are relatively few Washington cases addressing CR 56(f). However, it is essentially the same as Fed. R.

---

[3]CR 56(f) provides:

"Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

Civ. P. 56(f).[4] Therefore, we look to decisions and analysis of federal rules for guidance in interpreting the state rule. *Rinke v. Johns–Manville Corp.,* 47 Wn. App. 222, 225, 734 P.2d 533, *review denied,* 108 Wn.2d 1026 (1987).

Most federal courts considering the issue agree that a party must comply with Fed. R. Civ. P. 56(f) to preserve his or her contention that summary judgment should be delayed. *See, e.g., Foster v. Arcata Assocs., Inc.,* 772 F.2d 1453, 1467 (9th Cir. 1985) (failure to comply with the requirements of Fed. R. Civ. P. 56(f) is a proper ground for denying discovery and proceeding to summary judgment), *cert. denied,* 475 U.S. 1048, 89 L. Ed. 2d 576, 106 S. Ct. 1267 (1986); 6 J. Moore, *supra* at 56–820 to 56–821 ("[g]enerally, a contention by the opposing party that he was not given sufficient time to present matter in opposition cannot be successfully made for the first time on appeal"); *accord,* RAP 2.5.

In limited situations, the federal courts have shown leniency to parties who have not formally complied with Fed. R. Civ. P. 56(f). These include situations in which the party opposing the motion for summary judgment: (1) appeared pro se, *Garrett v. City & Cy. of San Francisco,* 818 F.2d 1515, 1518–19 (9th Cir. 1987); (2) was incarcerated, *Murrell v. Bennett,* 615 F.2d 306 (5th Cir. 1980); (3) honored the district court's order limiting discovery to one issue and moved to strike those portions of the other party's affidavits which addressed additional issues, *Program Eng'g, Inc. v. Triangle Publications, Inc.,* 634 F.2d 1188, 1193 (9th Cir. 1980); (4) moved to compel production of certain documents before the motion for summary judgment was heard, *Garrett,* 818 F.2d at 1518–19; or (5) filed a

---

[4]Fed. R. Civ. P. 56(f) is gender neutral while CR 56(f) uses masculine pronouns. Fed. R. Civ. P. 56(f) states:

"Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

letter stating that needed evidence was in the defendants' possession and the parties had previously agreed to complete the defendants' discovery before the plaintiff began his discovery, *Littlejohn v. Shell Oil Co.,* 483 F.2d 1140, 1146 (5th Cir.), *cert. denied,* 414 U.S. 1116, 38 L. Ed. 2d 743, 94 S. Ct. 849 (1973). None of these exceptions applies.

The trial court acted properly in hearing the motion on the basis of the showing before it. *See Shoberg v. Kelly,* 1 Wn. App. 673, 676, 463 P.2d 280 (1969), *review denied,* 78 Wn.2d 992 (1970). The judgment of the trial court is affirmed.

GROSSE, A.C.J., and WEBSTER, J., concur.