

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| SURAJ PINTO, | ) | No. 73650-7-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREGORY VAUGHN and JANE DOE | ) | |
| VAUGHN; PAOLA LEONE and JANE | ) | |
| DOE LEONE; LEONE & VAUGHN, | ) | |
| DDS, P.S., d/b/a LEONE & VAUGHN | ) | UNPUBLISHED OPINION |
| ORTHODONTICS; L. DOUGLAS | ) | |
| TRIMBLE and JANE DOE TRIMBLE, | ) | FILED: January 23, 2017 |
| | ) | |
| Respondents. | ) | |

VERELLEN, C.J. — Suraj Pinto received orthodontic treatment from Dr. Gregory Vaughn and Dr. Paola Leone. They referred Pinto to Dr. L. Douglas Trimble, an oral and maxillofacial surgeon, who performed two procedures on Pinto. The trial court granted summary judgment dismissing Pinto's claims for malpractice and lack of informed consent against Drs. Vaughn, Leone, and Trimble.

Given the nature of the procedures and alleged injury, Pinto needed to present qualified expert testimony regarding the standard of care and the material risks requiring informed consent. As to Dr. Trimble, one of Pinto's experts offered no opinion on the standard of care or material risks requiring consent. The other did not adequately establish his qualifications. As to Drs. Vaughn and Leone, the trial court

struck Pinto's experts for discovery violations. Pinto's challenges to the order striking the experts are not compelling.

Therefore, we affirm.

## FACTS

Suraj Pinto sought an orthodontic consultation with Dr. Gregory Vaughn on September 9, 2008. Drs. Vaughn and Leone are husband and wife. Dr. Vaughn examined Pinto and presented treatment options to him. Pinto started orthodontic treatment and agreed to "do five-teeth wilkodontics" on his "upper teeth only."[1] According to Pinto, the treatment involved poking holes in his gums to move his upper front teeth forward and Dr. Vaughn assured him that it was an easy and noninvasive way to move his teeth.

Before his final wilkodontics procedure, Pinto remembered receiving a voicemail from Drs. Vaughn and Leone's office asking him to either "do jaw surgery or full mouth wilkodontics."[2] When Pinto spoke to Dr. Vaughn at his next appointment, Dr. Vaughn told Pinto about the orthognathic procedure. Pinto said Dr. Vaughn described orthognathic surgery as a "mid-level outpatient procedure, similar to wilkodontics but with far better results. [Dr. Vaughn] also stated that this procedure had the same recovery time, same out of pocket expenses and no risks or side effects involved."[3] Based on Dr. Vaughn's description of the procedure, Pinto

---

[1] Clerk's Papers (CP) at 256-57.

[2] CP at 257.

[3] CP at 257.

2

followed the treatment plan and "[a]t their request, [Pinto] was asked to sign a financial contract. There was no change in informed consent however."[4]

Dr. Leone referred Pinto to Dr. L. Douglas Trimble for extractions and an orthognathic surgery evaluation. Dr. Trimble is an oral and maxillofacial surgeon.

Dr. Trimble extracted Pinto's bicuspids on September 3, 2009, and then performed maxillary and mandibular orthognathic surgery on August 24, 2011. Pinto started experiencing symptoms including tingling of his hands and feet, chest pains, high pulse rates, shortness of breath, and restless nights of sleep after the first procedure. According to Pinto, he had never been diagnosed or had issues with sleep apnea or any other disorder until he "began pre-surgery dental work with Dr. Leone, Dr. Vaughn, and Dr. Trimble."[5] Pinto also said that he "was verbally told that any nasal congestion or nerve damage were all temporary and not permanent."[6]

After the orthognathic surgery, Pinto had orthodontic appointments on October 12, 2011 and November 4, 2011. Pinto told Dr. Vaughn that he was unhappy with the outcome of the orthognathic surgery and did not attend his next scheduled appointment.

Pinto filed a lawsuit on August 21, 2014, alleging Drs. Trimble, Vaughn, and Leone failed to meet the required standard of care and did not obtain his informed consent. The case schedule listed trial for October 5, 2015 with an August 17, 2015

---

[4] CP at 258.

[5] CP at 258.

[6] CP at 259.

discovery cutoff date. The parties later agreed to extend the discovery cutoff to August 31, 2015.

*Dr. Trimble's Motion for Summary Judgment*

Dr. Trimble filed a motion for summary judgment citing Pinto's lack of expert testimony to support his claims. In response, Pinto produced declarations from Dr. James Rockwell and Dr. Jay Grossman. In the alternative, Pinto asked for a 60-day extension to present additional expert testimony.

Dr. Rockwell, an ear, nose, and throat doctor, made no mention of the standard of care or risks requiring informed consent.

Dr. Grossman, "a licensed Dentist in the State[s] of California and Nevada,"[7] incorporated by reference a report he had prepared in 2014. The report included limited opinions regarding Pinto's treatment, standard of care, and informed consent.

The trial court granted Dr. Trimble's motion for summary judgment in June 2015.

*Drs. Vaughn and Leone's Motion for Summary Judgment*

Two months later, Drs. Vaughn and Leone moved for summary judgment. Drs. Vaughn and Leone moved to strike Pinto's experts as a penalty for repeated discovery violations. The trial court granted the motion.[8] The court found, to the extent Pinto did provide any responses to Drs. Vaughn and Leone's discovery

---

[7] CP at 274.

[8] As part of its findings and conclusions, the trial court submitted a detailed analysis addressing the standards in Jones v. City of Seattle, 179 Wn.2d 322, 314 P.3d 380 (2013), as corrected (Feb. 5, 2014), and Burnet v. Spokane Ambulance, 131 Wn.2d 484, 933 P.2d 1036 (1997). See CP at 922.

requests, the responses were untimely and inadequate.

In the alternative, the court rejected the substance of expert opinions offered by Pinto. Dr. Panomitros's report did not include any references to his training or experience in orthodontics. The court concluded Dr. Panomitros's declaration and report were insufficient:

> The declaration does not identify any education from Dr. Panomitros related to orthodontia. It does not refer to any medical training related to orthodontia. It does not refer to any supervisory experience related to orthodontia—anything that would demonstrate his familiarity, his experience, his exposure to the standard of care for this specialty. And there are differences between general dentistry and orthodontia.[9]

The court also concluded Dr. Panomitros's declaration contained conclusory opinions; did not contain "any recitation of the salient facts, or documents" to support his opinions, failed to articulate the standard of care for orthodontists, and failed to articulate how "each defendant individually violated the standard of care and/or failed to obtain informed consent."[10]

The court noted that the opinions of Drs. Grossman and Rockwell were never identified to be used against Drs. Vaughn and Leone and granted summary judgment.

The trial court denied Pinto's motion for reconsideration. Although Pinto submitted a supplemental declaration from Dr. Panomitros, the trial court found that the new declaration did not reference any experience in treating the conditions at issue in this case. Further, Pinto did not offer an explanation as to why the

---

[9] Report of Proceedings (RP) (Sept. 17, 2015) at 54.

[10] CP at 924.

5

supplemental information could not have been provided sooner.

Pinto appeals.

## ANALYSIS

We review a summary judgment order de novo, engaging in the same inquiry as the trial court.[11] Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[12] "'Summary judgment in favor of the defendant is proper if the plaintiff fails to make a prima facie case concerning an essential element of his or her claim.'"[13]

Generally, expert testimony is required to establish the standard of care and proximate cause in dental or medical negligence actions.[14] The standard of care must be established by the testimony of experts who practice or have expertise in the relevant specialty.[15] An exception exists when the standard of care is self-evident.[16] "'The qualifications of an expert are to be judged by the trial court, and its

---

[11] Lallas v. Skagit County, 167 Wn.2d 861, 864, 225 P.3d 910 (2009).

[12] CR 56(c); Bohn v. Cody, 119 Wn.2d 357, 362, 832 P.2d 71 (1992).

[13] Rounds v. Nellcor Puritan Bennett, Inc., 147 Wn. App. 155, 162, 194 P.3d 274 (2008) (quoting Seybold v. Neu, 105 Wn. App. 666, 676, 19 P.3d 1068 (2001)).

[14] Harris v. Groth, 99 Wn.2d 438, 449, 663 P.2d 113 (1983).

[15] McKee v. American Home Products, Corp., 113 Wn.2d 701, 706-07, 782 P.2d 1045 (1989); Young v. Key Pharmaceuticals, Inc., 112 Wn.2d 216, 770 P.2d 182 (1989)).

[16] Miller v. Jacoby, 145 Wn.2d 65, 74, 33 P.3d 68 (2001) (a foreign substance was unintentionally left in a surgical patient.); Young, 112 Wn.2d at 228 ("Where the determination of negligence does not require technical medical expertise, such as the negligence of amputating the wrong limb or poking a patient in the eye while stitching a wound on the face, the cases also do not require testimony by a physician.").

determination will not be set aside in the absence of a showing of abuse of discretion.'"[17]

A doctor must inform the patient of the material facts, including the attendant risks, for a given treatment before obtaining the patient's consent to treatment.[18] A fact is material "if a reasonably prudent person in the position of the patient or his or her representative would attach significance to it deciding whether or not to submit to the proposed treatment."[19] Such material facts must be established by expert testimony.[20]

Generally, proximate cause is a question for the jury; however, it is a question of law for the court if the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt.[21] "'[M]edical testimony must demonstrate that the alleged negligence "more likely than not" caused the later harmful condition leading to the injury; that the defendant's actions "might have," "could have," or "possibly did" cause the subsequent condition is insufficient.'"[22]

---

[17] McKee, 113 Wn.2d at 706 (quoting Bernal v. American Honda Motor Co., 87 Wn.2d 406, 413, 533 P.2d 107 (1976)).

[18] RCW 7.70.050; Adams v. Richland Clinic, Inc., P.S., 37 Wn. App. 650, 656, 681 P.2d 1305 (1984); Smith v. Shannon, 100 Wn.2d 26, 29, 666 P.2d 351 (1983).

[19] RCW 7.70.050(2).

[20] RCW 7.70.050(3).

[21] Shellenbarger v. Brigman, 101 Wn. App. 339, 348, 3 P.3d 211 (2000).

[22] Id. (quoting Attwood v. Albertson's Food Ctrs., Inc., 92 Wn. App. 326, 331, 966 P.2d 351 (1998)).

*Dr. Trimble*

As to Dr. Trimble, Pinto relies on the declarations of Drs. Grossman and Rockwell, but their declarations do not reveal any genuine issue of material fact.

Dr. Rockwell, the ear, nose and throat doctor, does not even mention the standard of care for or material risks presented by oral surgery.

Pinto concedes "Dr. Grossman is not a maxillofacial surgeon."[23] He argues Dr. Grossman, a licensed dentist, is qualified because the relevant field of expertise is not always determined by the specific practice specialty but rather by the familiarity with the treatment or disease.

In Davies v. Holy Family Hospital, the plaintiffs relied on a radiologist to address the standard of care for several different health care providers.[24] But the radiologist failed to provide any basis for his familiarity with, or expertise in the specialties at issue.[25] Similar to the radiologist in Davies, Dr. Grossman failed to identify education, medical training, or supervisory experience that demonstrated his familiarity with the standard of care for an oral surgeon.

Additionally, the few references by Dr. Grossman to the standard of care were vague and conclusory.[26] Pinto contends Dr. Grossman's reference to an

---

[23] Appellant's Br. at 18.

[24] 144 Wn. App. 483, 489-95, 183 P.3d 283 (2008).

[25] Id. at 495.

[26] For example, "[I]t appears that there are valid complaints regarding breaches of the standard of care." CP at 284; "[T]heir actions [unspecified] failed to meet the requisite standards of care of orthodontists and surgeons collaborating to resolve Mr. Pinto's chief complaint which was quite simply adjusting his midline." CP at 285.

8

"unnecessary surgery and the failure to address Pinto's chief complaint all created the inference that there was a breach in the standard of care."[27] But he offers no authority supporting such a generous inference.

Alternatively, Pinto suggests Dr. Trimble waived his right to challenge the sufficiency of Dr. Grossman's declaration on summary judgment because he did not move to strike. But Dr. Trimble complied with LCR 56(e) by devoting a portion of his summary judgment reply brief to argue Dr. Grossman's declaration was inadequate. Dr. Trimble did not waive his right to object to the proffered expert declarations.

Pinto also suggests experts were not required, but the standard of care for the maxillary and mandibular orthognathic surgery performed by Dr. Trimble is not self-evident. Pinto failed to establish the appropriate standard of care for Dr. Trimble.

As to informed consent, neither Dr. Rockwell nor Dr. Grossman provided qualified expert testimony defining "the existence and nature of the risk and the likelihood of its occurrence."[28] Thus, Pinto failed to satisfy materiality requirements. In the absence of sufficient expert medical testimony regarding the existence and nature of the risks of the procedure and the likelihood of the risks, the trial court properly dismissed Pinto's informed consent claim against Dr. Trimble.

### Drs. Vaughn and Leone

Pinto argues the trial court abused its discretion when it struck his proffered expert declarations as a sanction for discovery violations.[29]

---

[27] Appellant's Reply Br. at 16.

[28] Adams, 37 Wn. App. at 657-58.

[29] Appellant's Br. at 25; see King County Fire Prot. Dists. v. Hous. Auth. of King County, 123 Wn.2d 819, 826, 872 P.2d 516, 519 (1994).

The trial court concluded the case schedule set out deadlines to facilitate discovery and trial preparation and "[d]efendants and their counsel are entitled to rely on the case schedule and state and local court rules."[30] The court opined that "'just cause for delay' means something that is unusual that prevents the identification of expert witnesses and their opinions and factual bas[e]s and reason for the same, despite the exercise by counsel of due diligence."[31]

Pinto offers no compelling challenge to the order. First, he argues he identified Dr. Panomitros as an expert witness in a supplemental disclosure. But as the trial court pointed out, he provided none of the other expert witness information required by CR 26. Second, he suggests Drs. Vaughn and Leone could have taken depositions and failed to propose dates for expert depositions. But there is no requirement that they do so. Third, he notes that Drs. Vaughn and Leone requested a continuance, failed to provide dates for expert depositions, and then delayed seeking a CR 26(i) conference. But Pinto cites no authority that such conduct excused his repeated discovery violations. Finally, he argues the electronic filing of the motion to strike was untimely by one minute. But he provides no authority that the trial court lacked the discretion to accept such an electronic filing as timely.

Pinto fails to support his narrow challenges to the trial court order striking his expert witnesses with any compelling authority. He fails to establish any abuse of discretion or legal error.[32]

---

[30] CP at 922.

[31] CP at 922.

[32] The trial court considered the Burnet factors on the record in its analysis. Pinto does not assign error to the trial court's analysis of those factors.

Alternatively, even disregarding the order striking Pinto's expert witnesses, summary judgment was warranted.

The alleged breach of the standard of care and lack of informed consent by Drs. Vaughn and Leone require qualified expert witness testimony. Pinto did not offer Dr. Rockwell or Dr. Grossman as experts regarding his claims against Drs. Vaughn and Leone.

Dr. Panomitros's first declaration states that he is a "licensed general dentist in the state of Illinois," but does not mention any experience or training in orthodontia.[33] This declaration did not qualify him to testify as to the appropriate standard of care for Drs. Vaughn or Leone.

As to his informed consent claims against Drs. Vaughn and Leone, Pinto argues he presented adequate evidence to warrant a trial. We disagree. He failed to provide an expert with the expertise to address materiality. We conclude the trial court properly dismissed Pinto's informed consent claim.

### Denial of CR 56(f) Extension

Pinto argues the trial court abused its discretion when it denied his request for an extension under CR 56(f) to allow the trial court to "fully evaluate other medical testimony."[34] CR 56(f) allows the court the discretion to grant an extension when affidavits are unavailable. The trial court may deny a 56(f) request if

---

[33] CP at 685.
[34] Appellant's Br. at 45.

> (1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact.[35]

Pinto requested a continuance in his response to summary judgment but failed to submit an affidavit in support of his contingent request for more time.[36] The case had been filed 10 months earlier. The discovery cutoff had been extended. And Pinto failed to (i) identify a reason for the delay, (ii) identify any new experts he expected to retain, and (iii) describe what testimony the experts would provide.

We conclude the trial court did not abuse its discretion when it denied Pinto's request for a CR 56(f) continuance.

### Motion for Reconsideration

Finally, Pinto argues the trial court abused its discretion when it denied his motion for reconsideration.[37] Pinto failed to set forth any specific reasons why the trial court's order was contrary to law, or that substantial justice had not been done.[38] The new declaration from Dr. Panomitros included more information about his experience and expertise in orthodontics, but Pinto did not explain why this information was not available when the first declaration was filed. He does not

---

[35] Janda v. Brier Realty, 97 Wn. App. 45, 54, 984 P.2d 412 (1999) (quoting Turner v. Kohler, 54 Wn. App. 688, 693, 775 P.2d 474 (1989)).

[36] See CR 56(f).

[37] See Wilcox v. Lexington Eye Institute, 130 Wn. App. 234, 240, 122 P.3d 729 (2005).

[38] CR 59(a)(7), (9).

present a "newly discovered evidence" rationale.[39] Pinto did not cite any authority or make any legal arguments supporting relief specific to CR 59(a)(7) or CR 59(a)(9).

We conclude the trial court did not abuse its discretion in denying Pinto's motion for reconsideration.

We affirm.

WE CONCUR:

---

[39] CR 59(a)(4) ("Newly discovered evidence, material for the party making the application, which the party could not with reasonable diligence have discovered and produced at the trial.").