# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Estate of

GENEIVA TATE.

MONICA TATE,

           Appellant,

     v.

PARTNERS IN CARE, LLC,

           Respondent.

No. 78411-1-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: September 30, 2019

LEACH, J. — In this probate action, Monica Tate challenges superior court orders approving a settlement, authorizing the distribution of real property, and determining the amount and reasonableness of attorney fees she owed to her former lawyer. Because she does not show the court abused its discretion with regard to any of these orders, we affirm.

## FACTS

Geneiva Tate died intestate on April 19, 2015, predeceased by her husband, Eddie Tate. Four children survived her, including Monica.[1] At the time of her death, Geneiva owned about 15 parcels of real property in Washington

---

[1] Because many parties share the same last name, we refer to them by their first name for clarity.

and Louisiana. Many of the properties were in dilapidated or uninhabitable condition. Still, all four of the heirs opposed sale of any of the real property based on their parents' wishes.

The court originally appointed Monica's sister Azani Tate as administrator of Geneiva's estate ("the Estate"). Monica retained attorney Jason Burnett and sought to remove Azani as the administrator. On October 16, 2015, the court appointed Partners in Care (PIC) as the successor administrator. The court revoked nonintervention powers at PIC's request, and probate proceeded under court supervision.

Settlement of Briar Box Litigation

In October 2012, Geneiva and Eddie agreed to sell one of the parcels, located on East Howell Street, to Briar Box II, LLC. Briar Box developed plans for the property and incurred costs for engineering and permitting. When the parties did not complete the sale, Briar Box sued Geneiva and Eddie for specific performance and damages. The lawsuit was still pending when PIC became the administrator.

PIC met with all four heirs. They expressed that "the Estate should direct its efforts to retaining the property as a meaningful part of the legacy left to them by their parents." In April of 2016, PIC and Briar Box settled the lawsuit, contingent upon court approval in the probate action. The settlement provided that the Estate would keep the East Howell Street property and pay Briar Box

$295,000 in damages. The Estate also would receive the right to all plans and designs created by Briar Box for its planned development of the property.

On April 29, 2016, PIC asked the court to approve the settlement. PIC justified the settlement as follows:

14. The Estate's heirs have repeatedly expressed to the PR [personal representative] their overriding concern for retaining the subject property (and all the properties belonging to the parents). While the Estate believes its defenses are very strong against any demand for specific performance, a loss at trial would not only lose the property but cause a judgment for damages and attorney fees, probably well in excess of $300,000. Given the assets of the Estate, this would almost certainly necessitate sale of one or more other properties, in addition to the loss of the subject property in the lawsuit. As the PR's primary duty is to settle an estate "as rapidly and quickly as possible, without sacrifice," RCW 11.48.010, the definite risk of such a substantial loss is better avoided by paying an amount to compensate the Plaintiff for damages and fees.

15. This particularly is true given the second portion of Plaintiff's claim, for damages, which would not be automatically defeated even if specific performance were denied. Plaintiff's damages also include a potential for interest on liquidated amounts that substantially increases the magnitude of a loss at trial.

16. Finally, the Estate will receive the benefit of the development work done by Plaintiff. While this is not essential, it is at least some compensatory value to offset the amount of the settlement payment.

Monica objected to the settlement, arguing that PIC should have sought specific performance of the contract. Noting that the property was appraised at approximately $366,000. Monica complained that the Estate was in essence paying $295,000 to preserve only $71,000 in value. And Monica contended that the planning and development work had no value to the Estate because it "lacks the money, the sophistication, the time and the authority to develop the subject

property in any fashion." On May 16, 2017, the superior court approved the settlement.

Distribution of Property and Burnett's Attorney Fees

On January 24, 2017, PIC asked the court for approval of its annual report dated December 20, 2016. The report included a list of the Estate's real property and each parcel's current market value. The report also included a distribution schedule dividing the assets into four shares of real property and cash, each valued at $1,019,516.81. Monica's share consisted of (1) the house in which she lived, on 51st Avenue South, with an estimated market value of $875,000; (2) a property on 64th Avenue South, with an estimated market value of $125,000; and (3) a cash distribution of $19,516.81.

PIC requested authority to distribute the Estate's property. Because the Seattle Police Department was investigating allegations that Monica had neglected and financially abused Eddie before his death, PIC asked to withhold Monica's share until the investigation was complete.

On February 14, 2017, a superior court commissioner granted PIC's requests and approved the distribution schedule. Monica did not appear at the hearing, nor did she challenge the court's order or the distribution schedule. PIC distributed property to the other three heirs.

On September 12, 2017, PIC asked the court to approve its final report dated August 23, 2017. The final report repeated the distribution schedule and market values stated in the prior annual report. PIC asked the court to hold a

hearing on its request on October 5, 2017. PIC agreed to Monica's request to continue the hearing to November 30, 2017.

On September 28, 2017, Monica responded to PIC's request. She did not object to the valuation or distribution of the property. Monica's response provided only that "[a]ny deed of distribution to Monica Tate should be recorded by the Personal Representative at estate expense" and "[a]ny funds distributed to Monica Tate should be sent directly to her counsel of record, Jason W. Burnett of Reed Longyear Malnati & Ahrens."

Soon afterward, Monica fired Burnett. On October 25, 2017, Burnett filed a notice of withdrawal and a lien for attorney fees in the amount of $17,477.27.

On November 13, 2017, Burnett asked the court to find his attorney fee request reasonable. Burnett explained that he sent Monica monthly statements detailing the work he performed and the rate charged. Burnett stated that Monica never objected to any statement. But, aside from an initial deposit, Monica had not paid Burnett in over two years.

On November 22, 2017, a superior court commissioner heard argument on Burnett's fee request. For the first time, Monica asserted she did not understand the monthly statements. She identified some billing entries she found confusing. The court explained them to her. Monica requested a continuance to obtain new counsel and have them review Burnett's billing statements. The court denied this request, stating, "I find the bill to be very detailed, very comprehensible, and quite reasonable in light of what went on during this

probate." On November 27, 2017, the court entered an order finding that Burnett's attorney fees were reasonable and ordering PIC to pay Burnett $18,793.45 out of Monica's share of the estate.

On November 30, 2017, the commissioner heard argument on PIC's request about the final distribution. Again, Monica did not object to the valuation or distribution of the property. Instead, she asked for a continuance so she could assert a creditor's claim against the Estate for various repairs she claimed that she had made to Estate property. Referring to RCW 11.40.051, the court noted that the period for filing creditor's claims had ended. The court denied the continuance request and entered an order approving PIC's final report.

Monica sought revision of both the court's November 27 and November 30 orders. In her revision requests, Monica challenged PIC's valuation of the 51st Avenue South property. She contended that it was based on a "desktop appraisal" that did not adequately consider the property's dilapidated interior.[2] Monica asserted that the property needed between $250,000 and $300,000 of repairs and should be valued no higher than $575,000.

On January 17, 2018, a superior court judge heard argument on the revision requests. Monica hired attorney Darcie Byrd to ask for a continuance. Byrd told the court that Monica retained her the previous evening, and she

---

[2] A desktop appraisal is based on records rather than an in-person inspection of the property.

needed additional to "review the voluminous record in this matter." The court denied the continuance and denied both requests for revision. Monica appeals.

STANDARD OF REVIEW

A court's decision about the reasonableness of a settlement agreement involves a factual determination that we review for abuse of discretion.[3] We also review a trial court's fee decision in a probate case for abuse of discretion.[4] When a party appeals an order denying revision of a court commissioner's decision, we review the superior court's decision, not the commissioner's.[5] We review the superior court's decision for abuse of discretion.[6] Abuse of discretion occurs "when the trial court's decision rests on untenable grounds or untenable reasons."[7]

ANALYSIS

Monica first challenges the court's approval of the Briar Box settlement.[8] She argues that the settlement did not protect the assets of the Estate.[9]

The administrator of an estate has a duty to settle the estate "as rapidly and as quickly as possible, without sacrifice to the probate or nonprobate

---

[3] Werlinger v. Warner, 126 Wn. App. 342, 349, 109 P.3d 22 (2005).
[4] In re Estate of Larson, 103 Wn.2d 517, 521, 694 P.2d 1051 (1985).
[5] In re Marriage of Williams, 156 Wn. App. 22, 27, 232 P.3d 573 (2010).
[6] Williams, 156 Wn. App. at 27.
[7] In re Estate of Peterson, 102 Wn. App. 456, 462, 9 P.3d 845 (2000).
[8] PIC argues that Monica was estopped from challenging the approval of the settlement or PIC's property valuation because she had prior opportunity to do so in the hearing on the interim report. We decline to consider this argument because PIC did not raise it below. See RAP 2.5(a).
[9] Because Monica did not designate the transcript of the hearing on the motion to approve the settlement, our review is limited to the pleadings.

estate."[10] A court may authorize an administrator to settle any claim owing the estate, with the aim of protecting the assets of the estate for the benefit of the beneficiaries.[11]

A settlement agreement must be "fair and equitable."[12] In determining the fairness, reasonableness, and adequacy of a proposed settlement agreement, the court must consider

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.[13]

Here, Monica does not show that the settlement was unreasonable. Monica does not dispute that "she attended the family meeting with [PIC] prior to the mediation" and all four siblings "unanimously desired that the property be kept, not just for its economic value but also because it represents a part of their parents' legacy, and it honors their parents' repeatedly expressed desires never to sell any of the land they had accumulated." Given the siblings' unified refusal to consider selling the property, it was reasonable for the court to approve a settlement addressing damages.

Moreover, the Estate had been involved in the Briar Box litigation for over three years. As PIC noted, the risks of an adverse outcome at trial were high.

---

[10] RCW 11.48.010.
[11] RCW 11.48.130; Snyder v. Tompkins, 20 Wn. App. 167, 171, 579 P.2d 994 (1978).
[12] In re A & C Props., 784 F.2d 1377, 1381 (9th Cir. 1986).
[13] A & C Props., 784 F.2d at 1381.

The Estate faced the loss of the property in addition to a judgment for damages and attorney fees that could exceed $300,000. After considering the evidence and the arguments of the parties, the court properly exercised its discretion in approving the settlement.

Monica next challenges the court's denial of a continuance of the hearing on Burnett's fees. She contends that the court abused its discretion in determining Burnett's fees were reasonable without giving her a fair opportunity to review the billing statements.

A trial court has broad discretion to grant or deny a continuance.[14] This court reviews the denial of a continuance for an abuse of that discretion.[15] A court may deny a motion for a continuance when

> "(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact."[16]

Monica did not tell the court what evidence she planned to obtain if it continued the hearing. She stated only that she found the billing statements confusing and wished to have an attorney explain them to her. But Monica did not specifically identify any erroneous or unreasonable charges. And Monica had the billing statements in her possession for years. She could have asked Burnett

---

[14] Trummel v. Mitchell, 156 Wn.2d 653, 670, 131 P.3d 305 (2006).
[15] Tellevik v. 31641 W. Rutherford St., 120 Wn.2d 68, 90, 838 P.2d 111, 845 P.2d 1325 (1992).
[16] Tellevik, 120 Wn.2d at 90 (quoting Turner v. Kohler, 54 Wn. App. 688, 693, 775 P.2d 474 (1989)).

to explain them to her at any time. "[W]here a party requests a continuance merely to seek information already provided by a declaration, the trial court does not err by denying such a request."[17]

On appeal, Monica cites discrepancies between the fees claimed in Burnett's declaration and the amount of the court's fee award. Because Monica did not raise this argument below, she fails to show that the court abused its discretion on these grounds. And because this court generally will not consider issues raised for the first time on appeal, we decline to address it.[18]

Citing Aiken, St. Louis & Siljeg, PS v. Linth,[19] Monica argues that the court should have conducted an evidentiary hearing on the amount of fees. But Aiken stands only for the proposition that a court did not abuse its discretion in finding that the total amount of fees was a contested factual issue requiring a hearing for determination.[20] A court has considerable discretion to determine whether factual and credibility issues require an evidentiary hearing.[21] And the court did conduct an evidentiary hearing at which it reviewed and considered Burnett's billing statements. Monica fails to show that the court abused its discretion.

Finally, Monica argues that the court approved an unequal distribution of property. She contends that PIC overvalued the 51st Avenue South property at $875,000 when in fact the property was worth much less.

---

[17] In re Estate of Fitzgerald, 172 Wn. App. 437, 448, 294 P.3d 720 (2012).
[18] RAP 2.5(a).
[19] 195 Wn. App. 10, 21, 380 P.3d 565 (2016).
[20] Aiken, 195 Wn. App. at 21.
[21] City of Blaine v. Feldstein, 129 Wn. App. 73, 76, 117 P.3d 1169 (2005).

RCW 11.108.030 provides that when a fiduciary distributes property in kind, the property "shall be valued at their respective fair market values on the date or dates of distribution." But a court does not abuse its discretion if its property valuation is within the range of the evidence.[22] PIC provided an appraisal of the property's market value based on the sale of other comparable properties in the neighborhood. Monica provided no evidence showing that the property needed $250,000 to $300,000 worth of repairs or that the needed repairs reduced the property's market value to $525,000.[23] A reviewing court does not reweigh the evidence or reassess the credibility of witnesses.[24]

PIC asks this court to award it attorney fees and costs on appeal pursuant to RAP 18.1(a). RCW 11.96A.150(1) allows a court to award costs and reasonable attorney fees to any party in an estate dispute; "[i]n exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved." Because the Estate is the prevailing party on appeal, we award PIC its reasonable attorney fees conditioned on its compliance with RAP 18.1(d). We also award costs to the Estate as the prevailing party pursuant to RAP 14.2.[25]

---

[22] In re Marriage of Soriano, 31 Wn. App. 432, 435, 643 P.2d 450 (1982).
[23] Monica's motion for revision references a letter from a contractor. However, Monica acknowledges that the letter is absent from the record.
[24] State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).
[25] Counsel for Monica filed a motion requesting this court disregard two unpublished cases inadvertently cited in the appellant's opening brief. The motion is granted.

No. 78411-1-I/12

Affirmed.

_____Leach, J._____

WE CONCUR:

_____Schindler, J._____   _____Appelwick, C.J._____