**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| JOHN HASSAPIS, | ) | No. 81936-4-I |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| WHIDBEY PUBLIC HOSPITAL | ) | |
| DISTRICT, | ) | UNPUBLISHED OPINION |
| Respondent. | ) | |
| | ) | |

MANN, C.J. — John Hassapis, M.D. sued his former employer, Whidbey Island Public Hospital d/b/a WhidbeyHealth Medical Center (WhidbeyHealth) for breach of contract and wage claims. Dr. Hassapis appeals the trial court's summary judgment and dismissal of his claims arguing that the court erred in denying his request for a continuance to conduct further discovery and in granting summary judgment. We affirm.

<u>FACTS</u>

Dr. Hassapis worked as a surgeon at a critical access hospital in Fortuna, California from 1995 to 2014. In June 2014, Dr. Hassapis and WhidbeyHealth entered into a physician employment agreement (agreement). Under the agreement, WhidbeyHealth would employ Dr. Hassapis as a general surgeon for an initial three-

Citations and pin cites are based on the Westlaw online version of the cited material.

year term, with automatic one-year renewals.  The agreement remained in effect from

July 16, 2014 until Dr. Hassapis's termination on November 1, 2019.  Dr. Hassapis

agreed to devote all of his professional time on behalf of WhidbeyHealth.

WhidbeyHealth agreed to pay Dr. Hassapis a base compensation and excess

call compensation.  Base compensation was defined in the agreement as:

> 35% of Gross Charges[1] for services personally performed by the
> Physician.  The first through third year guarantee is $351,575 per year, to
> be paid as described in Section 3 below.  If 35% of Gross Charges
> exceeds $351,575 during the twelve months of the first through third year,
> the difference between 35% of Gross Charges and $351,575 will be paid
> to the Physician before the end of the first quarter of the following year.
> Beginning year 4, compensation will be equal to 35% of Gross Charges
> unless new terms are mutually agreed upon by physician and the District.

Along with base compensation, the agreement sets a compensation ceiling equal to the

75th percentile of full-time physicians surveyed by the Medical Group Management

Association (MGMA).

WhidbeyHealth was obligated under the agreement for the first through third

years to pay Dr. Hassapis 35 percent of his gross charges, with a minimum guarantee

of $351,575, up to the compensation ceiling.  For later years Dr. Hassapis was entitled

to 35 percent of his gross charges, without a minimum guarantee, up to the

compensation ceiling.

After his termination, in January 2020, Dr. Hassapis sued WhidbeyHealth

alleging that it did not pay him the difference between his base pay and 35 percent of

---

[1] Gross Charges were defined as:
all monies charged for physician professional services rendered by the Physician at the
Physician Offices and at the Hospital.  Revenues for "designated health services," as
defined in 42 U.S.C. § 1395nn, shall not be included in the calculation of Physician's
Charges.

his gross charges. Instead, he alleged that WhidbeyHealth never calculated 35 percent of his gross charges, and instead paid him the base pay of $351,575 for each year he was employed. The complaint asserted a breach of contract claim and a statutory wage claim.

In response to discovery requests, in March 2020 WhidbeyHealth provided Dr. Hassapis's gross charges and 35 percent of those charges for 2014 through 2019:

2014: $319,885.00 x .35 = $111,959.75
2015: $939,408.11 x .35 = $328,792.84
2016: $755,313.34 x .35 = $264,359.67
2017: $664,522.60 x .35 = $232,582.91
2018: $787,551.40 x .35 = $275,642.99
2019: $762,647.10 x .35 = $266,926.49

The "Gross Numbers" for 2017 through 2019 were pulled from Centricity, the electronic health record system that is currently used and accessible by WhidbeyHealth. Prior to Centricity, which was implemented in 2017, Defendant used Healthwind. Thus, the "Gross Charges" listed above for 2014 – 2017 are preliminary, as some of the data is from the Healthwind system. Defendant currently has limited access to Healthwind and will supplement this response once it has been able to access the system to verify the numbers for 2014 – 2017.

On June 9, 2020, counsel for WhidbeyHealth e-mailed the referenced Healthwind reports to counsel for Dr. Hassapis showing the additional gross charges for Dr. Hassapis from 2014 through 2016, and part of 2017. The report showed $144,732.88 of additional charges for 2017. Counsel for WhidbeyHealth explained that to calculate gross charges for 2017:

you need to add the number from the attached to the number from the Centricity report we already sent, for a total of $144,732.88 + $644,522.60 = $809,255.48 x .35 = $283.239.42. Dr. Hassapis was paid $351,575.00 in base comp in 2017, so he was paid more than his contract required that year as well.

Two weeks after providing the supplemental responses, counsel for WhidbeyHealth contacted counsel for Dr. Hassapis and proposed a summary judgment

hearing date of August 18, 2020. Dr. Hassapis requested more time and the parties moved the proposed hearing date to September 1, 2020. WhidbeyHealth moved for summary judgment on August 4, 2020, two months after sending the Healthwind reports (all final physician production numbers) to Dr. Hassapis. Dr. Hassapis made no efforts to schedule depositions or seek more discovery between receiving the updated gross charge information and the September 1, 2020, summary judgment hearing date.

In its motion for summary judgment, WhidbeyHealth argued that Dr. Hassapis was not entitled to a production bonus based on gross charges for the first three contract years or the fourth year to the last year of employment. WhidbeyHealth's motion included a declaration from its general counsel, Jake Kempton (Kempton declaration), attaching the reports produced during discovery—including the 2017 Centricity report, the 2017 Healthwind report, and an August 4, 2020, report generated to break out the 2017 data that was charged at the end of the third contract year. Consistent with the previously provided discovery responses and supplemental communication between counsel, Kempton attached exhibits and explained that Dr. Hassapis's gross charges for 2014 were $319,885.00, and 2015 were $939,408.11. He also attached exhibits and explained that the gross charges for Dr. Hassapis "from 1/1/2016 to 12/31/2016 ($755,313.34), from 1/1/2017 to 12/31/2017 ($144,732.88 + $664,522.60), and from 7/16/2017 to 12/31/2017 ($373,218.90)."

In his response to the motion for summary judgment, Dr. Hassapis focused largely on interpretation of the agreement, arguing (1) that WhidbeyHealth's interpretation of the agreement was unconscionable, (2) that the definition of "Gross Charges" was ambiguous and should not exclude "designated health services," (3)

WhidbeyHealth offered no extrinsic evidence to support its interpretation of the agreement, and (4) that without context or plain meaning the agreement must be construed against WhidbeyHealth.

Dr. Hassapis also asserted there were disputes of material fact over work he performed and charges attributed to him. He challenged the accuracy of the reports included in the Kempton declaration, asserting that the reports were missing 1 parathyroidectomy and 2 laparoscopic appendectomies in 2014, and 25 colonoscopies in 2019. He also asserted that they included several procedures that he did not perform.

Dr. Hassapis also submitted a 2019 report titled "surgical center analysis" that included line items for Dr. Hassapis showing $642,413.00 for inpatient surgeries and $3,014,746.00 for outpatient surgeries. Dr. Hassapis explained that the report "did not have enough information for me to understand how the figures on it were calculated or how much of the charges I was entitled to."

In reply, WhidbeyHealth offered the declaration of its Director of Finance, Jennifer Reed, explaining that even if the purportedly missing procedures in 2014 and 2019 were included, Dr. Hassapis's gross charges would still not meet the amount of professional charges necessary to earn more than the base compensation. Reed also explained that the 2019 report "surgical center analysis" submitted by Dr. Hassapis reflected facility charges, not specifically services personally performed by Dr.

Hassapis. Reed's testimony was consistent with information provided in June 2020 by WhidbeyHealth's counsel.[2]

The trial court granted WhidbeyHealth's motion. The court determined that Dr. Hassapis's unconscionability argument did not apply; that the meaning of "Gross Charges" was unambiguous and limited to services personally performed by Dr. Hassapis; that he was paid more than the base wage for the first three contract years; that he was paid more than the base wage for the fourth contract year through the end of his employment; and that even if the missing procedures Dr. Hassapis contends were added, he was still overpaid. The trial court also determined that Dr. Hassapis had failed to establish a genuine issue of material fact. Finally, the court held that there was no support for granting a CR 56(f) continuance. Dr. Hassapis appeals.

ANALYSIS

This court reviews a trial court's grant of summary judgment de novo. Qualcomm, Inc. v. Dep't of Revenue, 171 Wn.2d 125, 131, 249 P.3d 167 (2011). Summary judgment is "appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Kittitas County v. Allphin, 190 Wn.2d 691, 700, 416 P.3d 1232 (2018); CR 56(c). The trial court may grant summary judgment if the pleadings, affidavits, depositions, and admissions demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Sheehan v. Cent. Puget Sound Reg'l Transit Auth., 155 Wn.2d 790, 797, 123 P.3d 88 (2005). The court must construe the

---

[2] On June 9, 2020, counsel for WhidbeyHealth explained to counsel for Dr. Hassapis that the 2019 surgical center analysis report referenced by Dr. Hassapis was only for facility charges and "does not include the professional charges for the surgeons, nor relate to surgeon pay at all."

facts in a light most favorable to the nonmoving party. Ranger Ins. Co. v. Pierce County, 164 Wn.3d 545, 552, 192 P.3d 886 (2008).

### A. 2017 Charges

In his appellate brief, Dr. Hassapis focuses mainly on the assertion that the Kempton declaration supports a conclusion that he was owed a production based bonus of at least $62,291 in 2017.[3]  This is so, Dr. Hassapis claims, because he reads the Kempton declaration's statement of gross charges for Dr. Hassapis "from 1/1/2017 to 12/31/2017 ($144,732.88 + $664,522.60), and from 7/16/2017 to 12/31/2016 ($373,218.90)" as meaning that the numbers for the full year of ($144,732.88 + $664,522.60) should be added to the numbers broken out for the second half of the year ($373.522.60) for a total of $1,182.474.  And because 35 percent of that total number is $413,866 and exceeds his base compensation of $313,575, by $62,291, Dr. Hassapis is owed additional salary.  We disagree for two reasons.

First, this argument is not properly before us on appeal because Dr. Hassapis failed to raise this issue below before the trial court.  An argument neither pleaded nor argued to the trial court cannot be raised for the first time on appeal. Johnson v. Lake Cushman Maintenance Co., 5 Wn. App. 2d 765, 780, 425 P.3d 560 (2018); RAP 9.12.[4]  As discussed above, while Dr. Hassapis questioned some reports submitted with the Kempton declaration, the arguments were limited to a few missed procedures and his misunderstanding of the 2019 surgical center analysis.  Dr. Hassapis did not dispute the

---

[3] On appeal, Dr. Hassapis abandons his argument that the definition of gross charges in the agreement was unconscionable, relegating the assertion to a footnote in his opening brief as something that could be addressed on remand.

[4] RAP 9.12 states, "[o]n review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court."

2017 charges set out by Kempton. Thus, Dr. Hassapis's argument that he was underpaid in 2017 is not properly before us.

Second, even if we did consider this argument, it fails because Dr. Hassapis misunderstood the reporting. WhidbeyHealth initially produced documentation from Centricity documenting $644,522.60 for 2017 gross charges and advised Dr. Hassapis that the number was preliminary because the hospital was waiting on additional information from the previous electronic health record system. On June 9, 2020, it obtained the additional report and explained that the first Centricity report ($644,522.60) should be added to the newly obtained Healthwind report ($144,732.88). This resulted in $809,255.48 in gross charges for the 2017 calendar year.

The Kempton declaration offered with WhidbeyHealth's motion for summary judgment, included a third report generated on August 4, 2020, breaking out the portion of those $809,255.48 in gross charges that accumulated from July 16, 2017, through December 31, 2017 ($373,218.90). Dr. Hassapis incorrectly reads this third report, for the first time on appeal, as reflecting additional gross charges beyond the previously disclosed 2017 calendar year total of $809.255.48. The $373,218.90 reflected in the Kempton declaration is a subset of the 2017 calendar year total, not an additive figure.[5] As a result, even if we considered Dr. Hassapis's argument, he failed to establish a genuine issue of material fact that he was underpaid in 2017. Summary judgment was proper.

---

[5] This is consistent with the declaration testimony of Jennifer Reed. Reed testified, after reviewing Kempton's declaration, that Dr. Hassapis's gross charges for the initial three-year contract period of July 2014 through July 2017 totaled $2,450,643.03. Reed arrived at this number using the reports, including Kempton's declaration, using $436,036.58 as the value for the first half of 2017 (the last portion of the third contract year). This figure was arrived at by subtracting $373,218.90, the value Dr. Hassapis asserts is additive, from the total of $809,255.48.

B. 2019 Charges

In his reply brief, Dr. Hassapis argues that the 2019 surgical center analysis establishes that he had a total production of over $1 million in the first month of 2019. This argument again fails.

First, Dr. Hassapis did not identify this issue in his opening brief or in his statement of issues as required by RAP 10.3. A reply brief must be "limited to a response to the issues in the brief to which the reply brief is directed." RAP 10.3(c). Generally, this court does not review an issue raised and argued for the first time in a reply brief. Bergerson v. Zurbano, 6 Wn. App. 2d 912, 926, 432 P.3d 850 (2018). This issue is not properly before us.

But even if the issue were before us, Dr. Hassapis fails to demonstrate that the 2019 surgical center analysis creates a material issue of genuine fact. As discussed above, this document was provided to Dr. Hassapis in October 2019. In June 2020, counsel for WhidbeyHealth explained to counsel for Dr. Hassapis that the 2019 surgical center analysis only included facility charges and "does not include professional charges for the surgeons, nor relate to surgeon pay at all." Counsel for WhidbeyHealth offered to talk more about the report, but reiterated "it has nothing to do with, nor is it helpful to figure out, gross charges and Dr. Hassapis' pay under his contract."

Dr. Hassapis took no further action before summary judgment to understand the report. Instead, he attached the report to his declaration in response to WhidbeyHealth's motion for summary judgment explaining that he "did not have enough information for me to understand how the figures on it were calculated or how much of the charges I was entitled to." In reply, Whidbey Health's director of finance reiterated

counsel's earlier statement that the surgery center analysis "reflect and include facility charges rather than charges for services personally performed by Dr. Hassapis." Dr. Hassapis offers no evidence to support his contention that the 2019 surgery center analysis reflects his gross charges or pay. Summary judgment was thus proper.

### C. CR 56(f) Request to Continue

Dr. Hassapis argues that the trial court erred in denying a CR 56(f) continuance because WhidbeyHealth's production of records was materially deficient and incomplete and must be supplemented with further discovery. We disagree.

The trial court's grant or denial of a motion for a CR 56(f) continuance will not be disturbed absent a showing of manifest abuse of discretion. Turner v. Kohler, 54 Wn. App. 688, 693, 775 P.2d 474 (1989). A court may properly deny a continuance when "(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact." Turner, 54 Wn. App. at 693. The court may ground a denial in any one of the three factors. Gross v. Sunding, 139 Wn. App. 54, 68, 161 P.3d 380 (2007).

Dr. Hassapis failed to meet the requirements necessary to obtain a continuance. He failed to present the trial court with a good reason for delay in obtaining evidence to respond to WhidbeyHealth's motion. The court heard WhidbeyHealth's motion for summary judgment on September 1, 2020. The lawsuit had been pending for seven months and Dr. Hassapis had the reports from WhidbeyHealth for almost three months. Dr. Hassapis failed to request a deposition or further discovery during that time. Dr.

Hassapis also failed to articulate to the trial court what additional evidence he expected to receive through further discovery. Because Dr. Hassapis failed to demonstrate why a CR 56(f) continuance was necessary, the trial court did not abuse its discretion in denying the request.

D. Oral Argument

During oral argument here, Dr. Hassapis's appellate counsel argued that the trial court erred in interpreting the contract in two, three-year periods because the contract prescribed an annual reconciliation method; therefore, the court manifestly abused its discretion and we must reverse. This issue was not raised in Dr. Hassapis's opening brief or identified as an issue on appeal.

When asked at oral argument why this issue was not identified or discussed in the opening brief, his counsel assured the court that the issue had indeed been briefed. That afternoon, Dr. Hassapis's counsel submitted a letter to the panel stating that the "two three-year periods of production review" argument is "woven throughout the reply brief" and provided page cites to direct the court to the issue within the reply brief.

Again, a reply brief must be "limited to a response to the issues in the brief to which the reply brief is directed." RAP 10.3(c). We will not review an issue raised and argued for the first time in a reply brief. Bergerson, 6 Wn. App. 2d at 926. Because Dr. Hassapis failed to identify or discuss this issue in his opening brief, we decline to review the issue.

Affirmed.

Mann, C.J.

WE CONCUR:

Andrus, A.C.J.

Verellen, J